# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP685-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Lamont L. Travis, |
| |         Defendant-Appellant. |

REVIEW OF A DECISION BY THE COURT OF APPEALS
340 Wis. 2d 639, 813 N.W.2d 702
(Ct. App. 2012 – Published)
PDC No: 2012 WI App 46

| | |
|---|---|
| OPINION FILED: | May 2, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 10, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Kenosha |
|   JUDGE: | Wilbur Warren III |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ROGGENSACK, J., dissents. (Opinion filed.) |
|   NOT PARTICIPATING: | PROSSER, J., did not participate. |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Christopher Wren*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant, there was a brief filed by *Suzanne Hagopian*, assistant state public defender, and oral argument by *Suzanne Hagopian*.

An amicus curiae brief was filed by *Anne Bensky*, and *Garvey McNeil & Associates, S.C.*, Madison, for the Wisconsin Association of Criminal Defense Lawyers.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP685-CR
(L.C. No. 2009CF417)

STATE OF WISCONSIN       :       IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent-Petitioner,

  v.

Lamont L. Travis,

    Defendant-Appellant.

**FILED**

**MAY 2, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals that modified the judgment of conviction of the Circuit Court for Kenosha County, Wilbur W. Warren III, Judge, and remanded the matter to the circuit court for resentencing.[1]

¶2 The court of appeals ordered the circuit court to modify the judgment of conviction to list Wis. Stat.

---

[1] State v. Travis, 2012 WI App 46, 340 Wis. 2d 639, 813 N.W.2d 702.

§ 948.02(1)(e) (2009-10),[2] rather than § 948.02(1)(d),[3] as the statute the defendant violated. The prosecuting attorney, the defense counsel, the circuit court, and the defendant agreed at the hearing on the defendant's postconviction motion that it was error to charge the defendant with violating § 948.02(1)(d), and all agreed that the defendant should have been charged with violating § 948.02(1)(e).

¶3 The State attempted to change its position before the court of appeals and attempted to prove that the correct charge was a violation of Wis. Stat. § 948.02(1)(d). The court of appeals rejected the State's theory that the crime was a violation of § 948.02(1)(d). State v. Travis, 2012 WI App 46,

---

[2] Wisconsin Stat. § 948.02(1)(e) provides:

Whoever has sexual contact with a person who has not attained the age of 13 years is guilty of a Class B felony.

All references to the Wisconsin Statutes are to the 2009-10 version unless otherwise noted.

[3] Wisconsin Stat. § 948.02(1)(d) provides:

Whoever has sexual contact with a person who has not attained the age of 16 years by use or threat of force or violence is guilty of a Class B felony if the actor is at least 18 years of age when the sexual contact occurs.

¶15 N.7, ¶19, 813 N.W.2d 702. The State does not challenge this part of the court of appeals decision before this court.[4]

¶4 The court of appeals also remanded the case for resentencing, concluding that resentencing was required because a structural error occurred when the circuit court imposed the sentence relying on the penalty provision for a violation of Wis. Stat. § 948.02(d) instead of the penalty provision for a violation of § 948.02(e).

---

[4] The State asserted a three-part argument in the court of appeals: (1) The defendant had pled guilty to a violation of Wis. Stat. § 948.02(1)(d) that had a mandatory minimum penalty and therefore the circuit court had no inaccurate information about the penalty; (2) the alleged error in the penalty provides a basis for withdrawal of the plea or a claim of ineffective assistance of counsel, not a basis for resentencing; and (3) the structural error doctrine does not apply to an inaccurate-information-at-sentencing claim, citing State v. Tiepelman, 2006 WI 66, 291 Wis. 2d 179, 717 N.W.2d 1, as adopting a harmless error analysis.

The court of appeals rejected the State's position as follows:

> The State also requests that we assume that a videotape of a statement by the victim——which is not included in the appellate record——is proof that Travis attempted to have sexual contact "by use or threat of force or violence." As the videotape is not in the record, and as defense counsel, the assistant district attorney, and the circuit court all agreed that Wis. Stat. § 948.02(1)(d) was not the crime Travis should have been charged with, we are again puzzled by the Attorney General's Office's argument. We address this frivolous argument no further, and adopt the findings of the circuit court that the five-year mandatory minimum was erroneous and that inaccurate information was presented to the court.

Travis, 340 Wis. 2d 639, ¶19.

¶5 The penalty provisions for Wis. Stat. § 948.02(1)(d) and for § 948.02(1)(e) are different. Although both are Class B felonies and carry the same maximum penalty of 30 years' imprisonment,[5] the difference is that § 948.02(1)(d) provides for a mandatory minimum period of confinement of five years;[6] § 948.02(1)(e) requires no mandatory minimum period of confinement.

¶6 The defendant moved for resentencing on the ground that his sentence was based on the inaccurate information that he was subject to a mandatory minimum five-year period of confinement. As the circuit court stated, the five-year mandatory minimum "was inaccurately referenced beginning in the

---

[5] The maximum penalty for a conviction in the present case under both statutes is 30 years' imprisonment because the offense charged here is an attempt. An attempt to commit first-degree sexual assault in violation of § 948.02(1)(d) reduces each of the periods of imprisonment by half. Wis. Stat. § 939.32(1m)(b).

"Penalties for felonies are as follows: . . . (b) For a Class B felony, imprisonment not to exceed 60 years," Wis. Stat. § 939.50(3)(b), with a bifurcated sentence consisting of a maximum period of initial confinement of forty years, Wis. Stat. § 973.01(2)(b), and a maximum period of extended supervision of twenty years, Wis. Stat. § 973.01(2)(d)1.

[6] "If a person is convicted of a violation of s. 948.02 (1)(d) or 948.025 (1)(c), the court shall impose a bifurcated sentence under s. 973.01. The term of confinement in prison portion of the bifurcated sentence shall be at least 5 years. Otherwise the penalties for the crime apply, subject to any applicable penalty enhancement." Wis. Stat. § 939.616(2).

4

pleadings and carried out through the plea, the sentencing and ultimately really pervaded the entire file in this case."[7]

¶7 Nonetheless, the circuit court denied the defendant's motion for resentencing, viewing the error as harmless.[8]

¶8 The court of appeals reversed the circuit court and remanded the case for resentencing, concluding that the error in sentencing, namely the mistake of law that a mandatory minimum period of confinement applies, constitutes structural error. The State focuses its objection on what it describes as the court of appeals' "unprecedented and radical determination that reliance on inaccurate sentencing can qualify as structural error."

¶9 The question of law presented to this court is whether a circuit court's imposition of a sentence using inaccurate information that the defendant was subject to a mandatory minimum five-year period of confinement is structural error or subject to the application of harmless error analysis.[9] If the latter, the question is whether the error in the present case was harmless.

---

[7] The citation to the wrong statute carried through the entire proceeding, namely in the Warrant, the Information, the Plea Questionnaire/Waiver of Rights, the plea colloquy, the Pre-Sentence Investigation report, the sentencing hearing, and finally, the judgment of conviction.

[8] Judge Warren presided at all of the proceedings in the circuit court, including the hearing on the defendant's postconviction motion requesting resentencing.

[9] This court decides questions of law independently of the circuit court and court of appeals but benefits from their analyses.

¶10  We conclude that imposing a sentence under the erroneous belief that the defendant was subject to a five-year mandatory minimum period of confinement is an error subject to a harmless error analysis.  The error is not a structural error, as the court of appeals stated.  We further conclude that the error in the present case was not a harmless error.  We affirm the decision of the court of appeals, but on different grounds, and remand the matter for resentencing.

I

¶11  For purposes of this review, the facts of the offense and the procedural history are not in dispute.

¶12  Lamont L. Travis, the defendant, was charged with one count of attempted first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1)(d).  The complaint and information erred in one very important respect: they charged a violation of Wis. Stat. § 948.02(1)(d), but did not contain any allegations supporting the "use or threat of force or violence" element in § 948.02(1)(d).

¶13  The defendant was convicted on his plea of guilty to a violation of Wis. Stat. § 948.02(1)(d).  As described above, the court of appeals ordered the judgment of conviction to be amended in accordance with the agreement of the prosecuting attorney, defense counsel, the defendant, and the circuit court to list the correct crime, a violation of Wis. Stat. § 948.02(1)(e).

¶14  The defendant has not sought, and does not now seek, to withdraw his guilty plea.  The defendant seeks resentencing.

II

¶15 We begin with two basic principles regarding sentencing:

¶16 First, sentencing decisions are left to the sound discretion of the circuit court. We review a sentencing decision to determine whether the circuit court erroneously exercised its discretion.[10] A discretionary sentencing decision will be sustained if it is based upon the facts in the record and relies on the appropriate and applicable law.[11]

¶17 Second, and somewhat related to a proper exercise of discretion, a defendant has a constitutionally protected due process right to be sentenced upon accurate information.[12] A defendant has a constitutional right to a fair sentencing process "in which the court goes through a rational procedure of

---

[10] In State v. McCleary, 49 Wis. 2d 263, 182 N.W.2d 512 (1971), the court explained that a sentencing court is to exercise its discretion on a rational and explainable basis. McCleary summarized the reasoning process of a sentencing court that facilitates appellate review of sentencing under the standard of erroneous exercise of discretion as follows:

> [T]he term [discretion] contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards.

Id. at 277, quoted with approval in State v. Gallion, 2004 WI 42, ¶19, 270 Wis. 2d 535, 678 N.W.2d 197.

[11] State v. Spears, 227 Wis. 2d 495, 506, 596 N.W.2d 375 (1999).

[12] Tiepelman, 291 Wis. 2d 179, ¶9.

7

selecting a sentence based on relevant considerations and accurate information."[13] When a circuit court relies on inaccurate information, we are dealing "not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude."[14] A criminal sentence based upon materially untrue information, whether caused by carelessness or design, is inconsistent with due process of law and cannot stand.[15]

¶18 It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.[16]

¶19 The defendant's postconviction motion seeking resentencing alleges that the defendant's due process rights were violated at sentencing because the circuit court imposed a

---

[13] Id., ¶26, (quoting United States ex rel. Welch v. Lane, 738 F.2d 863, 864-65 (7th Cir. 1984)).

[14] United States v. Tucker, 404 U.S. 443, 447 (1972).

[15] Townsend v. Burke, 334 U.S. 736, 741 (1948). See also Tucker, 404 U.S. at 447 (reinforcing the right to accuracy in sentencing).

For the history of the evolution of this jurisprudence in Wisconsin, see Tiepelman, 291 Wis. 2d 179, ¶¶9-25.

[16] Townsend, 334 U.S. at 741, cited favorably in Tiepelman, 291 Wis. 2d 179, ¶10.

8

sentence based on inaccurate information that he was subject to a mandatory minimum five-year period of confinement when, in fact, there was no mandatory minimum penalty applicable to his offense.

¶20 Whether a defendant has been denied due process is a constitutional issue which this court decides independently of the circuit court or court of appeals, benefiting from the analysis of these courts.[17]

¶21 State v. Tiepelman, 2006 WI 66, 291 Wis. 2d 179, 717 N.W.2d 1, teaches that a defendant is entitled to resentencing if the defendant meets a two-pronged test: (A) the defendant shows that the information at the original sentencing was inaccurate; and (B) the defendant shows that the court actually relied on the inaccurate information at sentencing.[18]

¶22 Proving that information is inaccurate is a threshold question. A defendant "cannot show actual reliance on inaccurate information if the information is accurate."[19] Once a defendant shows that the information is inaccurate, he or she must establish by clear and convincing evidence that the circuit court actually relied on the inaccurate information.[20]

---

[17] Tiepelman, 291 Wis. 2d 179, ¶9.

[18] Id., ¶26 (citing State v. Lechner, 217 Wis. 2d 392, 419, 576 N.W.2d 912 (1998)).

[19] State v. Harris, 2010 WI 79, ¶33 n.10, 326 Wis. 2d 685, 786 N.W.2d 409 (relating to sentencing involving race or gender considerations).

[20] Id., ¶¶4, 34.

¶23 Once the defendant shows actual reliance on inaccurate information, the burden then shifts to the State to prove the error was harmless.[21]

¶24 We now apply Tiepelman to the facts of the present case.

### III

¶25 We examine the record (A) to identify the inaccurate information; and (B) to determine whether the sentencing court actually relied on the inaccurate information.

### A

¶26 Addressing the first prong of the Tiepelman analysis, namely whether there was inaccurate information presented to the circuit court at sentencing, we note that the case comes before us from the court of appeals, which directed the circuit court to amend the judgment of conviction to reflect that the defendant pled guilty to Wis. Stat. § 948.02(1)(e),[22] which does not provide a mandatory minimum period of confinement. The circuit court, however, had previously sentenced the defendant on the basis of a conviction under § 948.02(1)(d), which provides for a mandatory minimum period of confinement. At sentencing, the circuit court repeatedly mistakenly stated that it was required to impose a five-year mandatory minimum period of confinement, although no such mandatory minimum was applicable. The circuit court agreed with counsel for the State

---

[21] Tiepelman, 291 Wis. 2d 179, ¶¶2, 9.

[22] Travis, 340 Wis. 2d 639, ¶4.

and the defendant at the hearing on the postconviction motion that "there should not have been a mandatory minimum. . . . So that error . . . pervaded the entire file in this matter . . . ."

¶27 We conclude, as did the circuit court, the court of appeals, the prosecuting attorney, the defense counsel, and the defendant that information relevant to the defendant's sentencing, namely a mandatory minimum period of confinement, was inaccurate and was presented to the circuit court at sentencing.

B

¶28 Addressing the second prong of the Tiepelman analysis, reliance on inaccurate information, this court, as the reviewing court, must examine the record to determine whether the circuit court "actually relied" on the inaccurate information at sentencing. Whether the circuit court "actually relied" on the incorrect information at sentencing, according to the case law, turns on whether the circuit court gave "explicit attention" or "specific consideration" to the inaccurate information, so that the inaccurate information "formed part of the basis for the sentence."[23]

¶29 A review of the record to determine whether there was actual reliance by the circuit court on the inaccurate information can be a difficult task. Sentencing decisions

---

[23] Tiepelman, 291 Wis. 2d 179, ¶14 (quoting United States ex rel. Welch v. Lane, 738 F.2d 863, 866 (7th Cir. 1984)).

11

depend on a wide array of factors, not all fully explained by the circuit court. A circuit court might not have explicitly considered the inaccurate information on the record or the record may be ambiguous.[24]

¶30 There are no "magic words" that the circuit court must use to enable a reviewing court to determine whether the circuit court gave "explicit attention" to inaccurate information. If a circuit court expressly paid heed to the inaccurate information, it is easier for a reviewing court to ascertain the circuit court's reliance on that information in passing sentence.[25] For a reviewing court to conclude there was actual reliance by the circuit court, a circuit court need not have stated, "Because of the existence of this [inaccurate information], you are sentenced to X years of imprisonment." For a reviewing court to conclude there was actual reliance in the present case, the circuit court need not have specifically said, "Because of the existence of the mandatory minimum, you are sentenced to prison time equal to or greater than the mandatory minimum."

¶31 In accordance with Tiepelman, we examine the record to determine whether the circuit court gave "explicit attention" or "specific consideration" to the inaccurate information so that the inaccurate information "formed part of the basis for the sentence."

---

[24] United States ex rel. Welch v. Lane, 738 F.2d 863, 866 (7th Cir. 1984).

[25] Id. at 866-67.

12

¶32 In the present case, the circuit court's reference to the inaccurate penalty information was explicit and repetitive. At least four times during the sentencing hearing, the circuit court explained that a mandatory minimum period of confinement was applicable to the defendant.

¶33 The circuit court opened the sentencing hearing by summarizing the charge and the penalty, explaining that a period of confinement of not less than five years applied to the defendant's conviction, to which the defendant's attorney replied, "Correct." The circuit court then turned to the defendant and said "So there's a five-year minimum. You understood that at the time your plea was given?" To which the defendant responded, "Yes, your honor." Here is the exchange:

> The Court: Good afternoon. The matter is here for sentencing. The charge is attempted first-degree sexual assault of a child under the age of 12. I would presume that the Class B that is reflected here would be the 30-year maximum term of confinement, bifurcated. There's a term of confinement, the prison portion of the bifurcated sentence, of not less than five years.
>
> Defendant's Attorney: Correct.
>
> The Court: So there's a five-year minimum. You understood that at the time your plea was given?
>
> The Defendant: Yes, Your Honor.
>
> The Court: So the Court's got an obligation here if a sentence is to be imposed other than straight probation that it has to be at least five years. Do you understand that?
>
> The Defendant: Yes, Your Honor.

13

¶34 The circuit court explained that it had an obligation if it decided to impose a sentence, other than probation, to impose at least five years of confinement.  The defendant again responded that he understood.

¶35 After this exchange with the defendant, the circuit court heard from the prosecuting attorney, the defendant's mother, the defendant, and defense counsel.  The prosecuting attorney recommended that the sentence include prison time but did not suggest the length of confinement or whether it should be concurrent or consecutive with a previously imposed sentence the defendant was serving.[26]

¶36 The other speakers at the sentencing hearing addressed factors the circuit court might consider but did not express any view on the number of years to be spent in confinement.  Defense counsel recommended a prison sentence concurrent with a previously imposed sentence of confinement.  The presentence investigation report, which also referred to a five-year mandatory minimum period of confinement, recommended ten years of confinement and ten years of extended supervision,

---

[26] Under the plea agreement, the State dismissed charges in two other cases and agreed to recommend a prison sentence but agreed not to specify the length or nature of the sentence.  The prosecuting attorney agreed to dismiss the Class H felony charge of failing to update his sex-offender registration information.  The prosecuting attorney dismissed but read in charges of two Class A misdemeanors (obstructing an officer and resisting arrest).

consecutive to a previously imposed sentence of nine years of confinement and four years of extended supervision.[27]

¶37 The circuit court discussed the defendant's criminal history and the seriousness of this offense before sentencing him to "a period of incarceration in the Wisconsin State Prison System of eight years of initial confinement followed by 10 years of extended supervision." This sentence was imposed consecutive to a previously imposed sentence of confinement the defendant was serving. The sentence the circuit court imposed is well below the maximum penalty under either Wis. Stat. § 948.02(1)(d) or § 948.02(1)(e).

¶38 At the circuit court's hearing on the defendant's postconviction motion requesting resentencing, the circuit court declared that the inaccurate information was not pertinent to its sentencing decision. Although conceding that the five-year mandatory minimum period of confinement was "inaccurately referenced" and "really pervaded the entire file in the case," the circuit court concluded it had no consequence on the sentence imposed and thus, any error was harmless.

¶39 The circuit court explained at the postconviction hearing that its sentencing decision was "primarily based" on

---

[27] The defendant's brief referred to information contained in the Pre-Sentence Investigation report (PSI). No one objected to the defendant's brief on this ground. This information in the PSI was not discussed on the record in the circuit court at the sentencing hearing or at the postconviction motion hearing. For a recent decision of the court on reference to a PSI in an appellate brief, see State Public Defender v. Court of Appeals, 2013 WI 31, ___ Wis. 2d ___, ___ N.W.2d ___.

15

the defendant's criminal record; that the sentence was based "not so much on the fact that there was a mandatory minimum;" and that "the existence or nonexistence of a mandatory minimum sentence [was] of no consequence. . . . [,] did not have any bearing on sentencing and was noted only to meet the statutory and case law requirements . . . ."

¶40 The circuit court's comments on its sentencing at the hearing on the defendant's postconviction motion are set forth in full as follows:

> The Court: Did the Court rely on the five-year minimum that was referenced, which I think all parties now recognize was inaccurately referenced beginning in the pleadings and carried out through the plea, the sentencing and ultimately really pervaded the entire file in this case. One of the reasons why it's referenced is because failure to do so is grounds for a postconviction motion and perhaps reversible error.
>
> Had the Court not made reference to it, at least in directing the defendant's attention to it, in this case or in any case where a minimum is available to the State, defendants have in the past have, and I suppose Mr. Travis here would be no different in this situation, have a viable argument to say, "Well, the Judge gave me X number of years, but I didn't know that there was a mandatory minimum. I never would have entered a plea to this case if I knew that there was a minimum, and no one ever told me there was a minimum."
>
> So the need to express what has been pled as a mandatory minimum, at least from a judicial perspective, is necessary to avoid potential reversible error and a valid claim for resentencing. The fact that it was mentioned, not only in the pleadings but especially by the Court at the time of sentencing, only goes to reinforce the Court's obligation to inform the defendant of what the Court believes is a valid sentencing consequence, a mandatory minimum.

16

Did the court rely on that mandatory minimum?   And again, this ties in, I suppose, in some roundabout way with the prejudice argument here, but as far as the Court's perspective on this, in imposing an eight-year sentence, that sentence was primarily based, and the record should reflect this, not so much on the fact that there was a mandatory minimum perceived to be in place at the time but that there was, in fact, a substantial prior record involving, among other things, prior sexual assault-type offenses.   And in our system of progressive type of consequences for similar criminal behavior, the Court typically, and I think this case was no different, would certainly consider that prior conduct as a substantial factor when it considers what an appropriate sentence should be in the instant case.

So from the Court's perspective, the existence or nonexistence of a mandatory minimum sentence is of no consequence to this Court in its determination of what an appropriate sentence were [sic].   Had that been the case, the Court, I'm sure, would have indicated to the defendant that, "Because of the mandatory minimum and the existence of it and the Court's belief, I am going to give you five years which is the mandatory minimum here because the law requires that," that certainly wasn't the case. As counsel points out and certainly the record reflects, this was an eight-year sentence of initial incarceration.

And, I don't think it's reasonable to suppose, nor can this Court support in any way, that the five-year mandatory minimum, which was believed to be in effect, had any bearing whatsoever on the imposition of the eight years of initial confinement.   So that said, I believe the defense is correct in their position here that there should not have been a mandatory minimum. The defendant would not have been so informed had it not been pled and carried through as part of the plea proceeding, but the sentence would not have changed because of the existence or nonexistence of the mandatory minimum.

So that error as it pervaded the entire file in this matter and the hearings that were held, that error I believe to be harmless because of the fact that it did not have any bearing on sentencing and was noted only to meet the statutory and case law requirements in

17

informing the accused of what consequences are available, both maximum and minimum sentencing requirements.

That said, I certainly accept the fact, [defense counsel], that the error existed in the recitation of that mandatory minimum, but I believe in the final analysis at sentencing that the error was harmless with respect to the entire proceeding and the sentencing so the motion for resentencing at this point would be denied for those reasons.

¶41 Now that the facts of the present case are laid out, for guidance in determining whether the circuit court actually relied on the inaccurate information at sentencing the Tiepelman case is again instructive.

¶42 In Tiepelman, 291 Wis. 2d 179, the circuit court read the defendant's Pre-Sentence Investigation (PSI) report as stating that the defendant had over 20 prior convictions at the time of the commission of the offense at issue, and referred to this "fact" on the record during sentencing. The defendant's PSI, however, indicated that he had been charged with 20 offenses before he committed the offense at issue, but it also indicated that only five of those offenses had resulted in convictions as of that date. The circuit court misread the PSI and stated inaccurate information on the record at sentencing.[28]

¶43 The Tiepelman court concluded, based on this one inaccurate statement by the circuit court, that Tiepelman had met his burden of showing that the circuit court actually relied

---

[28] Tiepelman, 291 Wis. 2d 179, ¶6.

18

on inaccurate information in reaching its decision on sentencing.[29]

¶44 In the present case, the circuit court did not merely once mention the inaccurate information. The circuit court referred to the mandatory minimum four times at the sentencing hearing and four times during the plea hearing, eight times in all. The circuit court did not say at sentencing whether the five-year mandatory minimum period of confinement was or was not a factor in sentencing.

¶45 In the present case, as in Tiepelman,[30] after sentencing, the sentencing court acknowledged the misinformation but denied the resentencing motion.

¶46 The standard, as stated in Tiepelman, to determine whether the circuit court "actually relied" on the incorrect information at sentencing is based upon whether the circuit court gave "explicit attention" or "specific consideration" to it, so that the inaccurate information "formed part of the basis for the sentence."[31] A circuit court's "explicit attention to the misinformation demonstrates [the circuit court's] reliance on that misinformation in passing sentence."[32]

¶47 "[T]he fact that other information might have justified the sentence, independent of the inaccurate

---

[29] Id., ¶¶4, 30.

[30] Id., ¶7.

[31] Id., ¶14 (quoting Welch, 738 F.2d at 866).

[32] Welch, 738 F.2d at 866-67.

information, is irrelevant when the court has relied on inaccurate information as <u>part</u> of the basis of the sentence."[33]

¶48 A reviewing court must independently review the record of the sentencing hearing to determine the existence of any actual reliance on inaccurate information. A circuit court's after-the-fact assertion of non-reliance on allegedly inaccurate information is not dispositive of the issue of actual reliance.[34]

¶49 We are satisfied, based upon a review of the record, that the circuit court gave "explicit attention" to the inaccurate penalty information and that this inaccurate information thus "formed part of the basis for the sentence." Thus we conclude that the defendant has met his two-pronged burden under <u>Tiepelman</u>. The burden shifts to the State to prove that the error was, nonetheless, harmless.

¶50 The <u>Tiepelman</u> court declined to address the harmless error issue because it had not been fully briefed or argued, and the parties agreed that it was appropriate to remand the case for resentencing.[35] The court of appeals in the present case

---

[33] <u>Welch</u>, 738 F.2d at 867, <u>cited with approval in</u> <u>Tiepelman</u>, 291 Wis. 2d 179, ¶14.

[34] <u>State v. Groth</u>, 2002 WI App 299, ¶28, 258 Wis. 2d 889, 655 N.W.2d 163 (other language withdrawn in <u>Tiepelman</u>, 291 Wis. 2d 179, ¶¶2, 31). Only when a case is overruled does it lose all of its precedential value. <u>See</u> <u>Blum v. 1st Auto & Cas. Ins. Co.</u>, 2010 WI 78, ¶56, 326 Wis. 2d 729, 786 N.W.2d 78; <u>see also</u> <u>Harris</u>, 326 Wis. 2d 685, ¶34 n.12 (discussing the effect of <u>Tiepelman</u>'s withdrawal of language from prior opinions).

[35] <u>Tiepelman</u>, 291 Wis. 2d 179, ¶¶30-31.

concluded that the error constituted structural error and no harmless error analysis was needed.[36]

C

¶51 This court must now determine whether the error in the present case is a structural error or whether a reviewing court must conduct a harmless error analysis.  Structural errors are per se prejudicial.[37]

¶52 The defendant asserts that the court of appeals correctly concluded the error in the present case was structural error and that the decision of the court of appeals adheres to and does not dismantle Tiepelman.  According to the defendant, the court of appeals concluded that the circuit court's misunderstanding about the mandatory minimum penalty was "akin to a structural error for which prejudice is presumed" in the rare case, like the instant case, in which the error was pervasive.[38]  The defendant views the court of appeals decision in the present case as a very narrow holding limited to the unusual circumstances of the present case.  The defendant's position is that the court of appeals decision regarding structural error does not apply generally to all cases involving

---

[36] Travis, 340 Wis. 2d 639, ¶¶21-24.

[37] Neder v. United States, 527 U.S. 1, 8 (1999); State v. Ford, 2007 WI 138, ¶¶42-43, 306 Wis. 2d 1, 742 N.W.2d 61; State v. Harvey, 2002 WI 93, ¶37, 254 Wis. 2d 442, 647 N.W.2d 189.

[38] The amicus curiae brief of the Wisconsin Association of Criminal Defense Lawyers argues that a harmless error analysis has no place when a defendant proves actual reliance upon erroneous information at sentencing.

inaccurate information in sentencing or even to all cases involving sentencing with inaccurate information regarding a mandatory minimum penalty.

¶53 The State acknowledges that error at sentencing can, in rare instances, qualify as structural error if the error concerns a defect already recognized as a structural error, such as denial of counsel at sentencing and delegation of a serious sentencing decision by a judicial officer to another. The State asserts that no court other than the court of appeals in the present case has, to the State's knowledge, classified reliance on inaccurate information at sentencing as a structural error.

¶54 Structural errors "seriously affect the fairness, integrity or public reputation of judicial proceedings and are so fundamental that they are considered per se prejudicial."[39] A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."[40] Structural errors "infect the entire trial process and necessarily render a trial fundamentally unfair."[41]

¶55 Constitutional errors may be structural errors or may be subject to harmless error analysis. Constitutional errors

---

[39] Ford, 306 Wis. 2d 1, ¶42 (quoting State v. Shirley E., 2006 WI 129, ¶62, 298 Wis. 2d 1, 724 N.W.2d 623).

[40] Id. (quoting Arizona v. Fulminante, 449 U.S. 279, 310 (1991)).

[41] Id. (quoting Neder v. United States, 527 U.S. 1, 8 (1999)).

22

that are so intrinsically harmful to substantial rights that they "are not amenable to harmless error analysis" are classified as structural errors.[42]

¶56 Although courts have often discussed the concept of structural error, structural errors have been found in a "very limited class of cases."[43]

¶57 The structural error doctrine arose in the context of trial errors but is applicable to sentencing errors. A structural error at sentencing includes, for example, a biased tribunal.[44]

¶58 The error at issue in the present case——the sentencing court's actual reliance on inaccurate information about a mandatory minimum period of confinement——simply does not resemble the limited number of cases in which an error has been categorized as a structural error.

¶59 The court of appeals does not cite any case that supports its conclusion that a structural error requiring automatic reversal occurred in the present case.

---

[42] Harvey, 254 Wis. 2d 442, ¶37.

[43] Ford, 306 Wis. 2d 1, ¶43 & n.4 (quoting Neder, 527 U.S. at 8; Harvey, 254 Wis. 2d 442, ¶37)).

[44] State v. Goodson, 2009 WI App 107, 320 Wis. 2d 166, 771 N.W.2d 385 (structural error when circuit court prejudges a sentence); State v. Gudgeon, 2006 WI App 143, ¶¶10, 31, 295 Wis. 2d 189, 720 N.W.2d 114 ("When a tribunal predetermines how it will rule, the error is structural and poisons the entire proceeding.").

¶60 The defendant cites three cases in support of his position on structural error: State v. Shirley E., 2006 WI 129, 298 Wis. 2d 1, 724 N.W.2d 623; State v. Goodson, 2009 WI App 107, 320 Wis. 2d 166, 771 N.W.2d 385; and Sullivan v. Louisiana, 508 U.S. 275, 281-82 (1993). These cases are significantly different from the present case.

¶61 In Shirley E., the court concluded that depriving a parent of the statutory right to counsel in a termination of parental rights proceeding constituted structural error.[45] The deprivation of counsel during critical stages in criminal proceedings has long been considered structural error, for which automatic reversal is required.[46] The Shirley E. court held that depriving a parent in a termination of parental rights proceeding of the statutory protection of counsel placed the fairness and integrity of the judicial proceedings in doubt.[47]

¶62 In Goodson, the sentencing court warned the defendant that if he violated the terms of extended supervision, the sentencing court would reconfine him to the maximum time available. The defendant subsequently violated the terms of extended supervision and at the reconfinement hearing, the

---

[45] State v. Shirley E., 2006 WI 129, ¶63, 298 Wis. 2d 1, 724 N.W.2d 623.

[46] Shirley E., 298 Wis. 2d 1, ¶62 (citing Neder, 527 U.S. at 8); Harvey, 254 Wis. 2d 442, ¶37; State v. Gordon, 2003 WI 69, ¶35, 262 Wis. 2d 380, 663 N.W.2d 765).

[47] Shirley E., 298 Wis. 2d 1, ¶633.

24

circuit court followed through on the promise it had made.[48]   The court of appeals, guided by State v. Gudgeon, 2006 WI App 143, ¶¶10, 31, 295 Wis. 2d 189, 720 N.W.2d 114, held that a tribunal that was not impartial constituted a structural error.   In Gudgeon, the court of appeals concluded that a "biased tribunal, like the lack of counsel, constitutes a 'structural error.'"[49]

¶63  In Sullivan, the United States Supreme Court held that a jury instruction that deprives a defendant of the right to a jury verdict of guilt beyond a reasonable doubt qualifies as structural error.[50]   In Sullivan, the jury instructions provided a definition of "reasonable doubt" that was essentially identical to the one held unconstitutional in Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam).[51]

¶64  The present case is unlike Shirley E., Goodson, or Sullivan.   In the present case, the defendant was not deprived of counsel (Shirley E.), did not face a biased tribunal (Gudgeon

---

[48] State v. Goodson, 2009 WI App 107, 320 Wis. 2d 166, 771 N.W.2d 385.

[49] Gudgeon, 295 Wis. 2d 189, ¶10.

[50] Sullivan v. Louisiana, 508 U.S. 275, 281-82 (1993).

[51] Id. at 277.

and <u>Goodson</u>), and was not deprived of his right to a jury verdict of guilt beyond a reasonable doubt (<u>Sullivan</u>).[52]

¶65 On the basis of the case law governing structural error, we conclude that the error in the present case simply does not fit into the general description of a structural error and is unlike previously categorized structural errors. We decline to extend the limited class of structural errors to the error in the present case, and thus we conclude that the present

---

[52] The defendant relies on <u>State v. Mason</u>, 2004 WI App 176, 276 Wis. 2d 434, 687 N.W.2d 526, and <u>State v. Kleven</u>, 2005 WI App 66, 280 Wis. 2d 468, 696 N.W.2d 226, for the proposition that the court of appeals has ordered resentencing with respect to inaccurate information in sentencing without engaging in a harmless error analysis. We conclude these cases are distinguishable.

In <u>Mason</u>, the circuit court erroneously believed the penalty for the crime was maximum confinement of 40 years. The correct maximum confinement was 37 years, 6 months. The circuit court imposed 27 years of confinement. The court of appeals ordered resentencing, noting the absence of "a viable harmless error argument from the State." <u>Mason</u>, 276 Wis. 2d 434, ¶1.

We read <u>Mason</u> to conclude not that the application of a harmless error analysis was not necessary, but rather that the State had failed to meet its burden to prove the error was harmless. <u>Mason</u>, 276 Wis. 2d 434, ¶¶1, 24 n.4.

In <u>Kleven</u>, the circuit court improperly calculated the maximum period of confinement for the defendant's base offense, without two penalty enhancers. The court of appeals accepted the State's concession of error and ordered resentencing.

We read <u>Kleven</u> to conclude that while a harmless error analysis would have been proper, the court of appeals did not apply it because the State did not argue the error was harmless and the State affirmatively requested a remand for resentencing. <u>Kleven</u>, 280 Wis. 2d 468, ¶28 n.8.

26

case does not involve a structural error requiring automatic reversal.

¶66 Having determined that the circuit court actually relied upon inaccurate information at sentencing and that the error is not subject to structural error analysis, we apply a harmless error analysis. The burden is on the State to prove that the error is harmless.[53]

IV

¶67 Harmless error analysis in criminal cases has, for the most part, been developed and applied to the guilt phase and less frequently to the sentencing phase. The State sets forth several formulations of the harmless error analysis and asserts that under any of the various formulations and alternative wordings of the harmless error analysis, the error in the present case is harmless.[54]

---

[53] Tiepelman, 291 Wis. 2d 179, ¶9 (citing Lechner, 217 Wis. 2d at 419).

[54] The State summarizes this court's approach to harmless error as follows:

"Wisconsin's harmless error rule is codified in Wis. Stat. § 805.18 and is made applicable to criminal proceedings by Wis. Stat. § 972.11(1)." State v. Sherman, 2008 WI App 57, ¶8, 310 Wis. 2d 248, 750 N.W.2d 500 (citing State v. Harvey, 2002 WI 93, ¶39, 254 Wis. 2d 442, 647 N.W.2d 189) (footnote omitted). "[I]n order to conclude that an error 'did not contribute to the verdict' within the meaning of Chapman, a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" State v. Harvey, 2002 WI 93, ¶48 n.14, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting Neder v. United States, 527 U.S. 1, 18 (1999)) (footnote added). See also State v.

Stuart, 2005 WI 47, ¶40 n.10, 279 Wis. 2d 659, 695 N.W.2d 259 (various formulations of harmless-error test reflect "alternative wording," citing Neder, 527 U.S. at 2-3; State v. Weed, 2003 WI 85, ¶29, 263 Wis. 2d 434, 666 N.W.2d 485; Harvey, 254 Wis. 2d 442, ¶48 n.14). "The standard for evaluating harmless error is the same whether the error is constitutional, statutory, or otherwise." Sherman, 310 Wis. 2d 248, ¶8 (citing Harvey, 254 Wis. 2d 442, ¶40). "The defendant has the initial burden of proving an error occurred, after which the State must prove the error was harmless." Id. (citing Tiepelman, 291 Wis. 2d 179, ¶3).

> The harmless error rule . . . is an injunction on the courts, which, if applicable, the courts are required to address regardless of whether the parties do. See Wis. Stat. § 805.18(2) (specifying that no judgment shall be reversed unless the court determines, after examining the entire record, that the error complained of has affected the substantial rights of a party).

Harvey, 254 Wis. 2d 442, ¶47 n.12. See Wis. Stat. § 805.18 (harmless-error rule, made applicable to criminal proceedings by Wis. Stat. § 972.11(1)); Harvey, 254 Wis. 2d 442, ¶48 n.14 (harmless-error test); see also State v. Martin, 2012 WI 96, ¶¶42-46, 343 Wis. 2d 278, 816 N.W.2d 270 (reviewing harmless-error principles and factors); Stuart, 279 Wis. 2d 659, ¶40 n.10 (various formulations of harmless-error test reflect "alternative wording"). The harmless-error test applies to claims of [sic] that a sentencing court relied on inaccurate information when imposing the sentence. Tiepelman, 291 Wis. 2d 179, ¶31.

The court summarized its approach to harmless error as follows in State v. Weed, 2003 WI 85, ¶¶28-29, 263 Wis. 2d 434, 666 N.W.2d 485:

> In . . . ultimately concluding that any error was harmless, the court of appeals appeared to employ a sufficiency of the evidence standard: "Because there was sufficient evidence, other than Michael's alleged

¶68 The State proffers the harmless error test codified in Wis. Stat. § 805.18(1), which is made applicable to criminal proceedings by § 972.11(1). Section 805.18(1) provides that "[t]he court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."

¶69 The Wisconsin statutory harmless error formulation is substantially similar to the one set forth in the Federal Rules

---

hearsay statement, to convict Patricia [Weed] beyond a reasonable doubt, we hold that any error in the admission of the Fuerbringers' testimony was harmless." State v. Weed, No. 01-1476-CR, unpublished slip op., ¶5 (Wis. Ct. App. May 16, 2002). To the extent that the court of appeals relied on a sufficiency of the evidence standard, it was in error.

To assess whether an error is harmless, we focus on the effect of the error on the jury's verdict. Harvey, 254 Wis. 2d 442, ¶44, 647 N.W.2d 189; see also State v. Carlson, 2003 WI 40, ¶87, 261 Wis. 2d 97, 661 N.W.2d 51 (Sykes, J., dissenting). This test is "'whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."'" Harvey, 254 Wis. 2d 442, ¶44, 647 N.W.2d 189 (quoting Neder, 527 U.S. at 15-16, 119 S. Ct. 1827 quoting in turn Chapman, 386 U.S. at 24, 87 S. Ct. 824). We have held that "in order to conclude that an error 'did not contribute to the verdict' within the meaning of Chapman, a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" Id., ¶48 n.14 (quoting Neder, 527 U.S. at 18, 119 S. Ct. 1827). In other words, if it is "clear beyond a reasonable doubt that a rational jury would have convicted absent the error," then the error did not "'contribute to the verdict.'" Neder, 527 U.S. at 15, 18, 119 S. Ct. 1827 (citation omitted).

29

of Criminal Procedure Rule 52(a).[55] Therefore, federal case law interpreting Rule 52(a) also provides guidance on this issue. In a review of a sentencing proceeding, the United States Supreme Court cited Rule 52(a) in holding that "a remand [for resentencing] is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the [sentencing] court's selection of the sentence imposed."[56]

¶70 The State submits that an error is harmless if the error did not contribute to the sentence,[57] that is, if there is no reasonable probability that the error contributed to the outcome.[58]

¶71 The State also offers that for an error to be harmless, the beneficiary of the error (here the State) must

---

[55] Rule 52(a), Federal Rules of Criminal Procedure:

**(a) Harmless Error**. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

[56] Williams v. United States, 503 U.S. 193, 203 (1992). See also United States v. Burke, 425 F.3d 400, 417 (7th Cir. 2005) ("An error is harmless only if it did not affect the district court's choice of sentence.").

[57] Chapman v. California, 386 U.S. 18 (1967).

[58] State v. Payette, 2008 WI App 106, ¶46, 313 Wis. 2d 39, 756 N.W.2d 423; State v. Groth, 2002 WI App 299, ¶22, 258 Wis. 2d 889, 655 N.W.2d 163 (other language withdrawn in Tiepelman, 291 Wis. 2d 179, ¶¶ 2, 31).

prove that it is clear beyond a reasonable doubt that the same result would have occurred absent the error.[59]

¶72 The State argues that the error was harmless under any articulation of the harmless error analysis.

¶73 The State can meet its burden to prove harmless error by demonstrating that the sentencing court would have imposed the same sentence absent the error. The State therefore correctly relies on the transcript of the sentencing proceeding in making its argument, and correctly refrains from relying on the circuit court's assertions during the hearing on the defendant's postconviction motion or speculation about what a circuit court would do in the future upon resentencing.[60]

---

[59] Harvey, 254 Wis. 2d 442, ¶49 (quoting Neder, 527 U.S. at 18).

See Tiepelman, 291 Wis. 2d 179, ¶12 ("While not explicitly addressing the issue of harmless error, the [United States Supreme Court in Tucker] stated that 'the real question here is . . . whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained.'").

See United States v. Paulus, 419 F.3d 693, 700 (7th Cir. 2005) (when the district court indicates it would have arrived at the same sentence regardless of which methodology it used to calculate the sentence, any error is harmless).

[60] In State v. Smith, 207 Wis. 2d 258, 262-63, 280, ¶¶2, 3, 37, 558 N.W.2d 379 (1997), the State requested a remand to the circuit court for a hearing to determine whether the defendant would have received a different sentence if the prosecutor had kept his plea agreement promise to make no recommendation on the sentence. The supreme court rejected the suggestion to remand for a hearing that "would necessarily involve speculation and calculation" by the circuit court. Smith, 207 Wis. 2d at 280.

¶74 According to the State, the sentencing court focused on the defendant's extensive juvenile and criminal record and the few positive aspects of the defendant's life. The State argues that although the circuit court referred to the mandatory minimum period of confinement, the sentencing court imposed the sentence only in light of the factors the circuit court emphasized at the sentencing proceeding. The State urges that the error did not affect the circuit court's selection of the sentence; there is no reasonable probability that the error contributed to the sentence; and that it is clear beyond a

---

In United States ex rel. Welch v. Lane, 738 F.2d 863 (7th Cir. 1984), the prosecutor contended that the factual error in sentencing was harmless because the defendant would be given the same sentence upon resentencing. The federal court of appeals responded that the prosecutor was merely speculating and that it would have to engage in the same speculation on the potential outcome. The federal court of appeals explained:

> Once it is established that the [trial] court relied on erroneous information in passing sentence, reviewing courts cannot speculate as to whether the same result would again ensue with the error corrected.

Id. at 868.

The United States Supreme Court rejected a similar "what would a future court do" approach to harmless error. In United States v. Tucker, 404 U.S. 443 (1972), the prosecutor argued that in view of the other detrimental information the sentencing court possessed about the defendant at the time of sentencing, it was "highly unlikely" that a different sentence would be imposed in the future even if the two invalid prior convictions in the record were not considered. The United States Supreme Court declared that resentencing was required because it simply could not be assumed that the sentencing court would again give the same sentence.

reasonable doubt that the same sentence would have been imposed absent the error.

¶75  We disagree with the State.

¶76  The circuit court in the present case gave explicit attention to the inaccurate information, repeatedly reminding itself, the prosecuting attorney, the defendant, and defense counsel that the conviction subjected the defendant to a five-year mandatory minimum period of confinement.

¶77  We acknowledge the circuit court's conclusion at the postconviction motion hearing that the sentence it imposed would have been the same even if it had not been mistaken about the mandatory minimum.  We are not, however, bound by the circuit court's retrospective review of its sentencing decision that was made almost a year before.

¶78  In determining whether the error in the present case was harmless, we give weight to the fact that the circuit court believed it was required by law to impose at least a five-year period of confinement.  The mandatory minimum penalty is, by statute, ordinarily the baseline for any confinement imposed. The inaccurate information regarding the mandatory minimum in the present case unnecessarily limited the sentencing court's discretion.

¶79  If the circuit court did not take this five-year mandatory minimum penalty into consideration at all, it was arguably committing an error of law.  A sentencing court usurps the legislature's sentencing role if it refuses to impose a mandatory penalty.  Similarly, it usurps the legislature's

33

sentencing role if it imposes a sentence believing there is a mandatory minimum when there is none.

¶80  When the circuit court imposes a sentence with the misunderstanding that a mandatory minimum period of confinement applies, the framework for sentencing is thrown off, and the sentencing court cannot properly exercise its discretion based on correct facts and law.  Furthermore, this kind of misunderstanding of the law violates the defendant's due process right to a "fair sentencing process" in which the sentencing "court goes through a rational procedure of selecting a sentence based on relevant considerations and accurate information."[61]

¶81  We take another factor into consideration in determining harmless error in the present case.  With the enactment of truth in sentencing, "judges have an enhanced need for more complete information upfront, at the time of sentencing."[62]  This court has encouraged circuit courts to refer to information provided by others.[63]  Yet in the present case, inaccurate information infused the information the circuit court received at sentencing from a variety of sources.  When the statements provided to the circuit court at sentencing are based upon inaccurate information about a mandatory minimum period of

---

[61] Tiepelman, 291 Wis. 2d 179, ¶10 (citing Townsend, 334 U.S. at 741).

[62] State v. Gallion, 2004 WI 42, ¶34, 270 Wis. 2d 535, 678 N.W.2d 197.

[63] Id., ¶34.

34

confinement, the circuit court does not have the benefit of recommendations or discussions based on accurate information.

¶82 At sentencing in the present case, the circuit court heard from the prosecuting attorney, the defendant, defense counsel, and the defendant's mother. All those who spoke at sentencing were under the mistaken impression that a five-year mandatory minimum period of confinement applied to the defendant's conviction. The circuit court also received a Pre-Sentence Investigation report (PSI) from the Department of Corrections. The PSI was based on a five-year mandatory minimum period of confinement.

¶83 A circuit court's exercise of discretion in sentencing may be significantly hindered when it has before it statements based on a universal mistake of law regarding a mandatory minimum period of confinement.

¶84 We realize that the defendant was sentenced to eight years of confinement, which is more confinement than the five-year mandatory minimum. The fact that the sentence was greater than the mandatory minimum and within the permissible range is not determinative of harmless error in the present case. It is not the actual sentence that determines the constitutionality of the sentencing procedure in the present case. When the defendant raises a due process challenge to the sentence, this court must consider whether the sentence is based on a

35

foundation of such materially inaccurate information that the proceedings are lacking in due process.[64]

¶85  We conclude that the error about the mandatory minimum period of confinement permeated the entire sentencing procedure.

¶86  The State has not met its burden of proving the error harmless.  The State has not demonstrated that the error did not affect the circuit court's selection of sentence; that there is no reasonable probability that the error contributed to the sentence; or that it is clear beyond a reasonable doubt that the same sentence would have been imposed absent the error.[65]

¶87  We conclude that imposing a sentence under the erroneous belief that the defendant was subject to a five-year mandatory minimum period of confinement is an error subject to a harmless error analysis.  The error is not a structural error, as the court of appeals stated.  We further conclude that the error in the present case was not a harmless error.  We affirm the decision of the court of appeals, but on different grounds, and remand the matter for resentencing.

¶88  For the reasons set forth, we affirm the decision of the court of appeals.  The defendant's sentence must be vacated, and the case must be remanded for resentencing.

---

[64] Tiepelman, 291 Wis. 2d 179, ¶10 (citing Townsend, 334 U.S. at 741).

[65] United States v. Schlifer, 403 F.3d 849, 855 (7th Cir. 2005) ("The government ultimately fails to meet its burden of demonstrating that, if the district court had known that the guidelines are advisory rather than mandatory, its choice of sentence would have been the same.").

¶89  *By the Court.*—The decision of the court of appeals is affirmed.

¶90  Justice DAVID T. PROSSER did not participate.

¶91 PATIENCE DRAKE ROGGENSACK, J. *(dissenting)*. I conclude that Lamont L. Travis was lawfully charged with an attempted violation of Wis. Stat. § 948.02(1)(d);[1] pled guilty to attempting to violate § 948.02(1)(d) and was convicted and sentenced for an attempted violation of § 948.02(1)(d), after being properly advised that the statute contained a minimum period of confinement in prison. I also conclude that in order to resentence Travis, he must move to withdraw his plea of attempting to violate § 948.02(1)(d), and prevail on his motion before the circuit court. Resentencing for a crime for which Travis was not charged or convicted does not vacate the crime of conviction. Therefore, I would reverse the decision of the court of appeals and affirm the conviction and sentencing of the circuit court. Accordingly, I respectfully dissent from the majority opinion.[2]

## I. BACKGROUND

¶92 Travis was charged with an attempt to have sexual contact with a child under the age of 16, T.M.G., contrary to Wis. Stat. § 948.02(1)(d), which is a Class B felony. On conviction, he faced a sentence of imprisonment not to exceed 30 years. Conviction of that charge, through the provisions of Wis. Stat. § 939.616(2), subjects a defendant to a bifurcated

---

[1] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

[2] Although I agree with the majority opinion's conclusion that no structural error occurred, majority op., ¶65, that agreement does not change my ultimate conclusion that Travis' conviction and sentencing should be affirmed.

sentence under Wis. Stat. § 973.01, which includes confinement in prison for at least five years.

¶93 The criminal complaint set out facts relevant to a showing of probable cause for the crime charged against Travis, who was T.M.G.'s uncle. T.M.G. told the officer that she was sleeping on the floor in her grandmother's living room next to a mattress where Travis was sleeping. She said she woke up around one o'clock in the morning and found her jeans unzipped with the defendant's hand in her pants and that she slapped his hand away before he touched her "private area." She said that sometime later she awoke again to find him rubbing the side of her stomach. She said she then got up and moved away from him to a couch and pretended to be asleep while he went to the bathroom. However, when Travis returned, he came to the couch and picked her up and carried her back to the mattress where he had been during the prior assault. When that happened, she told Travis her head hurt and she went into her grandmother's room. T.M.G. was ten years old at the time of the conduct alleged in the complaint.

¶94 During the plea hearing, the circuit court went over some parts of the complaint, pointing out to Travis that there was a potential of 20 years initial confinement and a five year minimum period of confinement. When asked if he understood both of those factors, i.e., the maximum and the minimum, Travis answered "Yes, I understand, Your Honor." During the plea hearing, it was also pointed out that in exchange for his plea, two other pending charges would be dismissed: 08CF643, failing

2

to register as a sex offender, and 08CM2317, obstructing or resisting arrest. Travis acknowledged that he had committed the conduct underlying those two charges that were being dismissed but read-in.

¶95 At sentencing, the court reminded Travis once again that the sentence to be imposed must include at least five years confinement. The court asked Travis if he understood that, and again, Travis responded, "Yes, Your Honor." The court then went through some of the details of the attempted sexual assault, pointing out that the child involved was only ten years old at the time. The court, relying on the complaint and the Child Advocacy Center (CAC) interview,[3] said:

> When she moved away and went into another room, the defendant brought her back into the living room area where they had both previously been laying and made additional efforts -- or made efforts to touch her at that point too. She was able to demonstrate the way he moved his hand down from the top of her shorts to a location halfway between her waistband to her vagina. Later in an interview at the CAC, she did confirm that his hand did, in fact, reach her pubic area.

¶96 The court also talked about Travis' prior record, which included at least eight prior convictions and three juvenile adjudications.

¶97 The court said that the penalties for Travis' assault of T.M.G. could be more severe, except that the State chose to charge Travis with an attempt, rather than a completed sexual

---

[3] The Child Advocacy Center (CAC) interview with T.M.G. is not in the record, but the parties agreed the circuit court could use it. Aside from what is relayed in the circuit court's sentencing, I do not know what information it contains.

assault of a child, cutting the maximum penalty in half. The court pointed out that Travis had "a couple of batteries" and threats to injure, as well as false imprisonment and second-degree sexual assault convictions.

¶98 The court explained that Travis' attempted assault of T.M.G. was a very serious offense and protection of the public was important. The court said that the conviction required significant confinement, otherwise the sentence would depreciate the seriousness of the offense. The court then sentenced Travis to eight years of initial confinement, followed by ten years of extended supervision. The court ordered that the sentence be consecutive to the sentence that he was serving for a 2000 sexual assault conviction. The court also ordered that he have no further contact with T.M.G.

¶99 Subsequently, Travis moved the court to conclude that he was sentenced based on inaccurate information because the crime that he was charged with was not that crime described or designated in the complaint, but rather, it was a violation of Wis. Stat. § 948.02(1)(e), which does not include the use or threat of force or violence and has no minimum period of confinement. For the first time at that hearing, the State, with a new district attorney appearing, said there was no allegation of the use or threat of force or violence. The complaint was not reviewed, and the court seemed to proceed based on the assumption of the State and defense counsel.

¶100 The court said that if there were an error in the factual allegations in the charge, it did not result in an

4

erroneous sentence because the court would have given the same sentence even if there had not been a mandatory minimum for the crime of conviction. The court explained,

> So from the Court's perspective, the existence or nonexistence of a mandatory minimum sentence is of no consequence to this Court in its determination of what was an appropriate sentence [here]. Had that been the case, the Court, I'm sure, would have indicated to the defendant that, "Because of the mandatory minimum and the existence of it and the Court's belief, I am going to give you five years which is the mandatory minimum here because the law requires that," and that certainly wasn't the case. . . . And I don't think it's reasonable to suppose, nor can this Court support in any way, that the five-year mandatory minimum, which was believed to be in effect, had any bearing whatsoever on the imposition of the eight years of initial confinement. . . . [T]he sentence would not have changed because of the existence or nonexistence of the mandatory minimum.

¶101 The court of appeals reversed. It ordered new sentencing based on a conviction for another attempted violation of Wis. Stat. § 948.02(1)(e), without examining the facts set out in the complaint and without Travis moving to withdraw his plea. The court of appeals did not discuss what conduct may encompass the use or threat of force or violence when a child is the victim and an adult is the perpetrator and whether reasonable inferences from the facts set forth in the complaint satisfied statutory requirements of § 948.02(1)(d). The court of appeals also did not address whether the plea that resulted in Travis' conviction could be vacated without a motion to do so by Travis and a determination that manifest injustice would result if permission to withdraw the plea were not afforded.

## II. DISCUSSION

### A. Standard of Review

¶102 Whether the facts alleged in a criminal complaint are sufficient to show probable cause that the crime stated in the complaint was committed is a question of law for our independent review. State v. Robins, 2002 WI 65, ¶20, 253 Wis. 2d 298, 646 N.W.2d 287. Whether an adult who picks up a ten-year-old child who has moved away from the scene of an attempted sexual assault and carries her back to the place of that attempt is encompassed with "use or threat of force or violence" as set out in Wis. Stat. § 948.02(1)(d) is a question of statutory interpretation that requires our independent review; however, we benefit from the prior discussion of the court of appeals and the circuit court. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581.

### B. Sufficiency of the Complaint

¶103 To determine whether a criminal complaint is sufficient, we examine the document to determine "whether there are facts or reasonable inferences [therefrom] set forth that are sufficient to allow a reasonable person to conclude that a crime was probably committed and that the defendant probably committed it." State v. Reed, 2005 WI 53, ¶12, 280 Wis. 2d 68, 695 N.W.2d 315. The complaint is sufficient if it addressed five questions: "(1) Who is charged?; (2) What is the person charged with?; (3) When and where did the alleged offense take place?; (4) Why is this particular person being charged?; and (5) Who says so? or how reliable is the informant?" Id.

6

(internal quotation marks and citation omitted). The test is one of "minimal adequacy, not in a hypertechnical [evaluation] but in a common sense evaluation." Evanow v. Seraphim, 40 Wis. 2d 223, 226, 161 N.W.2d 369 (1968).

¶104 Here, the complaint charges Travis with attempted violation of Wis. Stat. § 948.02(1)(d), sexual contact with a person under 16 years of age, by the use or threat of force or violence. The complaint states that the alleged attempted assaults took place on or about March 24, 2009 in Kenosha, Wisconsin. It alleges that Travis repeatedly attempted to touch T.M.G.'s pubic area. When T.M.G. moved away from Travis, he went to where she had moved and carried her back to the place of the prior attempted sexual assaults and again attempted to touch her pubic area. T.M.G. was Travis' niece and ten years old at the time of the attempted sexual assaults. The complaint was based on law enforcement reports and citizen informants.

¶105 At neither the plea hearing nor at sentencing did Travis assert that the complaint was insufficient to support the charge that he attempted to sexually assault T.M.G. by the use or threat of force or violence. However, he now assumes that the facts alleged in the complaint and the reasonable inferences therefrom are not sufficient to support an alleged use or threat of force or violence in the attempted sexual assaults of T.M.G. He does so with no analysis of the complaint. With the exception of a brief comment at oral argument, the State seems to give little thought or push-back to his contention. Accordingly, I construe Wis. Stat. § 948.02(1)(d) to analyze

7

whether there are sufficient factual allegations in the complaint to support this statutory requirement of conviction.

## C.  Wisconsin Stat. § 948.02(1)(d)

¶106 Wisconsin Stat. § 948.02(1)(d) provides:  "Whoever has sexual contact with a person who has not attained the age of 16 years by use or threat of force or violence is guilty of a Class B felony if the actor is at least 18 years of age when the sexual contact occurs."  What conduct constitutes "use or threat of force or violence" can vary depending on the circumstances under which the sexual assault occurs.

¶107 The use or threat of force or violence is to be read in the disjunctive.  See State v. Baldwin, 101 Wis. 2d 441, 447-54, 304 N.W.2d 742 (1981).  Conduct or words that attempt to compel submission of the victim to the acts of the perpetrator satisfy the standard of the "use or threat of force or violence."  See id. at 451.  As we said, "any conduct coming within that generalized force concept need not be further particularized."  See id.

¶108 What conduct or words may constitute an attempt to compel the victim to submit will vary, depending on the circumstances of the assault.  Here, the age of the victim is a factor to be considered.  T.M.G. was only ten years old; Travis was 37 years old.  The relationship of the perpetrator to the victim is also a factor.  Travis was T.M.G.'s uncle, whom she regarded as a father figure, i.e., someone in a position of authority over her.  The relative physical strength of the perpetrator when compared with that of the victim is also a

8

factor. Here, T.M.G. slapped Travis' hand away and then moved from the place of the attempted sexual assaults. Travis went to T.M.G.'s chosen location, picked her up and physically carried her back to his mattress where he attempted a further assault.[4] His relationship with T.M.G., as an authority figure, and his size when compared with ten-year-old T.M.G., permitted him to overwhelm her choice to move away from him to stop his attempts at sexual assault. In picking her up and carrying her back to his mattress, Travis attempted to compel her submission to his desires. Stated otherwise, picking up a young child involves the use of force by the adult to overwhelm the choice of the child to prevent access to her body by physically distancing her from the abuser.

¶109 Accordingly, when all of the above factors are evaluated, the facts alleged in the complaint, and the reasonable inferences therefrom, are sufficient to support probable cause that Travis attempted to compel T.M.G.'s submission, thereby coming within the statutory phrase, "by use or threat of force or violence" of Wis. Stat. § 948.02(1)(d).

---

[4] That Travis attempted further sexual contact at that time is found in the discussion of the circuit court. See ¶95. It is not noted in the complaint, but must have been in the CAC interview that the court reviewed. However, the CAC interview is not in the record. I have assumed that Travis agrees with the circuit court's statements because if he did not, it was his burden to provide the CAC interview for our review. See Lee v. LIRC, 202 Wis. 2d 558, 560 n.1, 550 N.W.2d 449 (Ct. App. 1996); Wis. Stat. § 809.15(1).

### D. Plea Withdrawal

¶110 There is no provision in the statutes nor logical rationale that supports the conclusion that the circuit court erred by sentencing on incorrect information when the court sentenced the defendant for the crime charged, to which he pled and of which he was convicted. Here, the majority gets around this problem by saying Travis "pled guilty" to attempting to violate Wis. Stat. § 948.02(1)(e).[5] However, the majority opinion's attempt to duck Travis' conviction for attempting to violate § 948.02(1)(d) by saying he pled to a different crime and then not referring to his actual conviction does not change the conviction.

¶111 If Travis really believes he attempted to violate only Wis. Stat. § 948.02(1)(e) and therefore he was incorrectly sentenced, he must move to withdraw his plea and have the information charging him with an attempted violation of § 948.02(1)(d) amended.

¶112 Travis can withdraw his plea after sentencing only if permitting the judgment to remain would be a manifest injustice. See State v. McCallum, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). Generally, if a plea is withdrawn, other charges that were dismissed at the plea will be reinstated. See State v. Deilke, 2004 WI 104, ¶2, 274 Wis. 2d 595, 682 N.W.2d 945.

¶113 Given the burdens that follow an attempt to withdraw a plea after sentencing, one can see why Travis has not moved to

---

[5] Majority op., ¶26.

10

withdraw his plea.[6] However, the majority opinion is willing to create new law for Travis, a repeating felon with a record of sexual assaults, and to order the circuit court to sentence him for a crime of which he was not convicted. I do not believe that the law supports the majority opinion's choice.

### III. CONCLUSION

¶114 I conclude that Travis was lawfully charged with an attempted violation of Wis. Stat. § 948.02(1)(d); pled guilty to attempting to violate § 948.02(1)(d) and was convicted and sentenced for an attempted violation of § 948.02(1)(d), after being properly advised that the statute contained a minimum period of confinement in prison. I also conclude that in order to resentence Travis, he must move to withdraw his plea of attempting to violate § 948.02(1)(d) and prevail on his motion before the circuit court. Resentencing for a crime for which Travis was not charged or convicted does not vacate the crime of conviction. Therefore, I would reverse the decision of the court of appeals and affirm the conviction and sentencing of the circuit court.

¶115 Accordingly, I respectfully dissent from the majority opinion.

---

[6] Moving to withdraw his plea subsequent to sentencing will require examination of the complaint as I have done and may result in the reinstatement of two charges that were dismissed due to the plea.

11