**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 19, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP2306-CR**

Cir. Ct. No. 2016CF130

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

THOR L. JEPSEN,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Polk County: JEFFERY ANDERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Thor Jepsen appeals from a judgment of conviction, following his plea of no contest to third-degree sexual assault, and an

order denying his motion for postconviction relief. Jepsen argues his due process rights were violated when the circuit court referenced at sentencing a presentence investigation report (PSI) that suggested Jepsen was a "low-moderate" risk to re-offend, even though a proper tabulation of Jepsen's Static-99R assessment would have placed him at a "low" risk to re-offend. The court denied Jepsen's postconviction motion on the grounds of harmless error, stating that it would have imposed the same sentence regardless of whether Jepsen was only a "low" risk to re-offend. We affirm.

## BACKGROUND

¶2 An amended criminal complaint charged fifty-year-old Jepsen with three counts of sexual assault of a child under sixteen years of age and one count of repeated sexual assault of a child. The victim was the thirteen-year-old daughter of the woman whom Jepsen had been engaged to marry. The child reported that Jepsen had sexually assaulted her at least twenty times beginning when she was eleven or twelve years old.

¶3 Jepsen eventually pleaded no contest to one count of third-degree sexual assault, and the remaining counts were dismissed outright. The circuit court ordered a PSI, stating, "I'll order a PSI, long-form; if they wish to do a Static-99 to add some additional information it might be helpful." Subsequently, a PSI was prepared covering a wide range of topics, including a description of the current offenses, Jepsen's prior criminal record, family and personal history, substance use history, residential history, and the results of a Static-99R evaluation. The PSI stated with regard to the latter: "According to a Static-99 assessment completed on Mr. Jepsen, he is a low-moderate risk offender and should be recommended for treatment. A more in[-]depth psychosexual

2

evaluation would need to be completed in order to assess Mr. Jepsen's risk to reoffend as accurately as possible." The PSI further noted that Jepsen stated during his interview that "[h]e cannot see himself committing this type of offense and denies it." The PSI concluded that Jepsen had failed to take responsibility for his actions, and that Jepsen's "lack of responsibility shows his internal rationalization and justification of his behavior and cognitive thinking errors regarding this type of offense." The PSI recommended a sentence of three to five years' initial confinement and five years' extended supervision. Both parties recommended a withheld sentence and probation.

¶4      At sentencing, the State did not reference the Static-99R results listed in the PSI. Jepsen's counsel mentioned the results once, stating, "He comes off as a low to moderate re-offense risk with a recommendation of treatment." The circuit court also mentioned the results once: "According to the Static-99 assessment completed, Mr. Jepsen—he's low to moderate risk to re-offend, and should be recommended for treatment, but a more in-depth psychosexual evaluation would need to be completed in order to assess Mr. Jepsen's risk to re-offend as accurately as possible."

¶5      The circuit court went on to state its major concerns on sentencing Jepsen were his lack of remorse and failure to take responsibility for his actions. The court noted that with regard to treatment in the community, "that usually starts at least with an ability to admit one's behavior in order to gain treatment from that point in time." The court also noted that there was a need to protect the public because of various factors and that "a prison sentence is required in this case." The court then sentenced Jepsen to three years' initial confinement and five years' extended supervision. The court also required lifetime sex offender registration.

¶6 Jepsen sought postconviction relief, arguing that an error in the calculation of his Static-99R score led to his sentence being based on inaccurate information. After a hearing, the circuit court noted the PSI author had testified that if she was to "regive the questions that she would have changed her raw score numbers … by one point," which would have lowered the risk scale from low-moderate to low. The court stated that "it's effectively a stipulation or agreement based upon the testimony that there was inaccurate information in the PSI." Nevertheless, the court found the error was harmless, because the court would have imposed the same sentence even if the Static-99R score had been tabulated correctly. Jepsen now appeals.

## DISCUSSION

¶7 We review a claim that a sentencing error denied a defendant due process independently, but benefitting from the circuit court's analysis. *State v. Travis*, 2013 WI 38, ¶20, 347 Wis. 2d 142, 832 N.W.2d 491. In raising a due process claim seeking resentencing based on inaccurate information, a defendant must make two showings. First, the defendant must show the information was inaccurate. *Id.*, ¶21. Second, the defendant must show by clear and convincing evidence that the court actually relied upon the inaccurate information in the sentencing. *Id.*, ¶22. If the defendant makes these two showings, the burden shifts to the State to show beyond a reasonable doubt that the error was harmless. *Id.*, ¶23. The State can meet its burden to prove harmless error by demonstrating that the sentencing court would have imposed the same sentence absent the error. *Id.*, ¶73.

¶8 The parties agree that the PSI contained an inaccurate risk categorization due to the improperly scored Static-99R assessment, and also that a

proper tabulation of Jepsen's re-offend risk would have placed him as a low risk. Regarding the second prong of the analysis, Jepsen argues the circuit court relied on the inaccurate Static-99R risk categorization by specifically requesting the Static-99 assessment, indicating that it had considered the PSI, and explicitly referencing the information at the sentencing hearing. While we are doubtful the court actually relied upon the inaccurate information at sentencing, even assuming without deciding that the court relied upon the inaccurate information, we conclude any reliance on the information was harmless.

¶9    Here, the PSI included one minor mistake. In the twenty-two-page PSI, the mistake was limited to one line: it called Jepsen a "low-moderate risk offender" instead of a "low risk offender." This inaccuracy was the result of a one-point difference in Jepsen's Static-99R assessment, which would have lowered the risk scale from low-moderate to low. The circuit court mentioned Jepsen's "low-moderate" risk score only once in passing at sentencing, and that was at the end of the court's discussion about Jepsen's character. However, the court also noted that "a more in-depth psychosexual evaluation would need to be completed in order to assess Mr. Jepsen's risk to re-offend as accurately as possible."

¶10    The circuit court's sentencing remarks began at page twenty-four of the sentencing transcript and continued through page forty. The one-line, limited reference to Jepsen's categorization as a "low-moderate" risk offender therefore, did not pervade or dominate the sentencing discussion. Rather, the court merely summarized its conclusions about Jepsen's character by stating, "So there's good and bad, both, with regard to character as the Court sees it."

¶11    As the sentencing transcript clearly establishes, the circuit court's focus was not on Jepsen's re-offend risk. The court stated that its major concerns with Jepsen were based on two factors namely, his showing no remorse and his taking no responsibility for his actions. The court found a need to protect the public stemming from these considerations. A correct scoring of the Static-99R risk assessment would implicate neither of these factors, and therefore, would not affect the court's assessment of the public's need for protection from Jepsen.

¶12    Jepsen's Static-99 risk score also played no role in the circuit court's decision to impose a prison sentence. Rather, the court considered Jepsen's failure to take responsibility when it concluded that prison was the appropriate punishment. The court stated, "With regard to treatment in the community, that usually starts at least with an ability to admit one's behavior in order to gain treatment from that point in time." The court also emphasized the age and "mental acumen" of the victim, as well as the close relationship and position of trust that Jepsen violated. The court found, "due to the seriousness of the offense, as well as an apparent need to protect the public … that a prison sentence is required in this case." The court further found that "the predominant factor" was "the seriousness of the offense." A correct scoring of the Static-99R would not have affected the court's assessment of any of these factors.

¶13    Jepsen nevertheless argues "a nexus exists between the inaccurate Static-99R score … and the circuit court's discussion of a lack of remorse as it related to the protection of the public sentencing factor." Put differently, Jepsen contends an accurate assessment of his risk to re-offend "is highly favorable evidence-based information that counters the court's concern with Mr. Jepsen's lack of responsibility as it related to his ability to benefit from treatment."

¶14    We are not persuaded, because Jepsen fails to show the circuit court's reliance on a low-moderate risk to re-offend versus a low risk to re-offend would have or should have changed the court's finding that Jepsen failed to take responsibility for his crime. Further, the Static-99R does not address the likelihood of Jepsen's ability to benefit from treatment. Finally, the court is not bound by the risk assessment results. So, the court could correctly consider Jepsen's lack of responsibility as indicating that he would not benefit from community treatment regardless of whether his risk assessment was low or low-moderate.

¶15    Finally, Jepsen argues the inaccurate Static-99R score "relates directly" to the protection of the public sentencing factor that the circuit court "prioritized" at sentencing. Jepsen also contends the inaccurate risk assessment information directly impacted the court's ability to accurately consider the protection of the public as it related to the court's decision to impose lifetime sex offender registration rather than a fifteen-year requirement.[1] As such, Jepsen argues "the inaccurate risk assessment information directly impacted the court's ability to accurately consider the protection of the public as it relates to the period of sex offender registration."

¶16    As discussed above, the circuit court's position with respect to the protection of the public did not stem from the Static-99R; it was a result of Jepsen's lack of remorse and failure to take responsibility for his acts. The record

---

[1]  Jepsen's conviction required sex offender registration for a period of fifteen years. *See* WIS. STAT. §§ 301.45(1d)(b), (1g)(a) (2017-18). However, under WIS. STAT. § 973.048(4) (2017-18), the circuit court had discretion to order lifetime sex offender registration.

on appeal demonstrates beyond a reasonable doubt that the court would have imposed the same sentence in the absence of the inaccurate information in the PSI.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).