COURT OF APPEALS
DECISION
DATED AND FILED

August 25, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2019AP1380-CR**
**2019AP1381-CR**

Cir. Ct. Nos.  2017CF58
2017CF59

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOSHUA D. GOLDSMITH,

DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Marinette County:  JAY N. CONLEY, Judge.  *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In these consolidated appeals, Joshua Goldsmith argues he is entitled to resentencing on his convictions for substantial battery and possession of child pornography because inaccurate information was introduced and relied on by the circuit court at sentencing. We reject both of Goldsmith's claims and affirm.

¶2 Regarding the substantial battery conviction, Goldsmith contends the circuit court relied on the State's representation that the victim's head wound was eight inches long when it was, in fact, slightly less than four inches. He argues this erroneous belief contributed to the court's conclusion that the wound was severe and disfiguring. We conclude Goldsmith has not shown actual reliance on the inaccurate information about the length of the wound, as it is undisputed that the wound was significant and cut to the bone.

¶3 In the child pornography case, Goldsmith argues the circuit court's statement that the child pornography was "on" his phone was inaccurate when the pornography was, in fact, located in his e-mail account and merely accessible from the phone. We conclude Goldsmith is judicially estopped from making this argument, as he stipulated at the sentencing hearing that most of the pornography was located "on his phone." We also conclude his claim fails on its merits, as the State has demonstrated that Goldsmith's sentence would have been no different had the court believed the pornography was located on Goldsmith's e-mail account.

## BACKGROUND

¶4 These appeals arise out of two circuit court cases. In Marinette County case No. 2017CF58, Goldsmith was charged with disorderly conduct,

misdemeanor battery, and substantial battery based on an assault upon his girlfriend, during which he bruised her back by pushing her against a wall and made her fall against a table, causing a deep laceration in her forehead.

¶5 In Marinette County case No. 2017CF59, Goldsmith was charged with three counts of possession of child pornography and a single count of possessing an intimate representation of a person without the person's consent. The child pornography charges were based upon the discovery of videos sent as attachments to e-mails from an e-mail address his girlfriend had identified as belonging to Goldsmith. Goldsmith's girlfriend believed the videos, which she viewed on Goldsmith's phone, depicted Goldsmith's hand massaging the intimate areas of one or more minor girls. The intimate representation charge was based on a video recording that Goldsmith made of him having sex with an adult female, which recording was made without the victim's consent.

¶6 The cases were resolved by a global plea agreement. Goldsmith agreed to plead no contest to substantial battery in case No. 2017CF58 and to one count of possession of child pornography in case No. 2017CF59. The remaining counts were recommended to be dismissed and read in at sentencing. The State agreed to recommend one year of initial confinement and two years' extended supervision on the substantial battery charge, and a consecutive sentence of three years' initial confinement and ten years' extended supervision on the child

pornography possession charge.[1]  Goldsmith's pleas were accepted, and he was found guilty.[2]

¶7      At the sentencing hearing, two victim impact statements were given. The mother of the girlfriend whom Goldsmith had battered discussed the severity of the injury to her daughter and the fact that, at the time the battery occurred, her granddaughter (the victim's minor daughter) had been present in the residence and had called 911 because "there was blood everywhere and she thought her mother was dead."  Additionally, the State represented that it had identified one of the minor girls (a three-year-old at the time of the video) in the videos found in Goldsmith's possession.  The child's guardian discussed the trauma the girl in the video had experienced.  The prosecutor told the circuit court it was "hard to say" whether more than one child victim could be seen in the videos; although there were different dates associated with the videos, the dates indicated when they were sent to and from Goldsmith's e-mail account, not the dates they were created.[3]

---

[1] Although the plea agreement used the terms "prison time" and "probation," the correct terms for the portions of a bifurcated sentence in Wisconsin are "initial confinement" and "extended supervision." *See* WIS. STAT. § 973.01(2) (2017-18).  Additionally, although the plea agreement stated that the sentences would be jointly recommended, the defense was in fact free to argue at sentencing, which the State clarified at the plea hearing.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The plea proceeding was conducted by the Honorable James A. Morrison.

[3] The e-mails were dated December 5, 2016, December 26, 2016, and February 5, 2017, and some had multiple videos attached.  The prosecutor stated Goldsmith was not being charged with sexual assault because in the video in which they were able to identify the victim, there was not clear touching or penetration sufficient to establish the elements of that crime.  Additionally, the victim was very young at the time and was unable to recall details of the events.  Goldsmith denied at the sentencing hearing that he had created the videos.

¶8     The circuit court stated the content of the child pornography videos was pertinent information relative to the sentencing, and it adjourned the hearing to another date when the videos could be made available for viewing.   In the interim, the State disclosed to the court that a total of eleven videos containing child pornography were found in Goldsmith's possession—three of which had been charged, and eight videos that had not been the subject of any criminal charges.  The court stated:

> So for the purposes of the record, what we viewed are ten videos that are on Mr. Goldsmith's phone.  One of the videos was not on Mr. Goldsmith's phone.  It was obtained in a search warrant executed by Marinette County, and it was obtained from an e-mail account in the name of Joshua Goldsmith.

The court then asked the parties whether that statement was factually accurate, and both the prosecution and defense agreed it was.

¶9     The circuit court then asked how the parties wished to address the eight new videos that had been brought to its attention.   The prosecution and defense agreed that the new videos should be considered within the ambit of the original plea agreement and should be treated as read-in offenses constituting additional charges of possession of child pornography, such that the State would be precluded from ever bringing additional charges based upon them.   The prosecution reiterated that there was only one identifiable victim in the videos, and Goldsmith reiterated his denial that he had made the videos.

¶10     The circuit court then proceeded to sentencing.  During the State's argument, the prosecutor thrice stated that Goldsmith's girlfriend had sustained "an eight-inch laceration" to her forehead during Goldsmith's attack.   It is undisputed that this statement was incorrect; the actual length of the wound was

5

about four inches. The defense did not object to these statements, either at the time they were made or during defense counsel's oral argument.

¶11 Following the defense argument and the allocution, the circuit court began its sentencing remarks by noting Goldsmith appeared not to have taken responsibility for his conduct. It emphasized the harm to the victims, including that Goldsmith's girlfriend had suffered a "hideous horrible scar that [he had] permanently disfigured her with." Later, the court stated that Goldsmith's girlfriend had sustained a cut that took "nine stitches to close" and that had caused "permanent disfigurement and numbness." The court opined that the facts likely could have supported a higher-level battery charge comprising great bodily harm.

¶12 In discussing the possession of child pornography conviction, the circuit court expressed disbelief at Goldsmith's various explanations for how he came to possess the material. According to the court, Goldsmith acknowledged that alleged child pornography had been found "on his e-mail account," but he believed it was possible that someone had surreptitiously placed the videos in his e-mail without his knowledge. The court found Goldsmith's claim that he had no knowledge of the child pornography incredible, as a forensic analyst believed that the same person had taken the videos of the adult and child sexual activity; the videos appeared "homemade"; Goldsmith's girlfriend had identified his hand in the videos; and the identified minor was someone with whom Goldsmith had resided. Throughout this discussion the court occasionally stated, without objection, that the various videos had been found "on [Goldsmith's] phone."

¶13 Ultimately, the circuit court sentenced Goldsmith to the maximum penalty on the substantial battery charge—eighteen months' initial confinement and two years' extended supervision. The court also ordered the maximum

sentence on the possession of child pornography count—fifteen years' initial confinement and ten years' extended supervision—to be served consecutively to the substantial battery sentence.

¶14     Goldsmith filed postconviction motions seeking resentencing in both cases based upon his claims that the circuit court relied upon inaccurate information at his sentencing.  As to his sentence for substantial battery, Goldsmith claimed the State had presented inaccurate information about the length of the laceration to the victim's forehead, and the court had relied on that information by emphasizing the disfiguring nature of the injury as an aggravating factor.  As to his sentence for possession of child pornography, Goldsmith asserted the court had erroneously believed the videos were stored on Goldsmith's phone, rather than on an e-mail account accessible from the phone.  Goldsmith claimed that the court's conclusion that Goldsmith was likely the person who had created the videos was based on this erroneous belief.

¶15     The circuit court denied the motions following a hearing.  The court acknowledged the State had presented inaccurate information regarding the length of the victim's scar.  It determined, however, that it had not relied on that information because it never specifically mentioned the length of the scar in its sentencing comments, it had viewed pictures of the injury, and the injury (having gone down to the bone) was undisputedly grievous.

¶16     Regarding the child pornography, the circuit court concluded the sentence was based on accurate information because the court had noted Goldsmith's defense was that someone had placed the videos in his e-mail account, the person who had discovered the videos had viewed them on

Goldsmith's phone, and it was irrelevant whether the videos were physically stored on the phone or merely accessible from it. Goldsmith now appeals.

## DISCUSSION

¶17     As an initial matter, the State argues Goldsmith forfeited his right to a review of the alleged errors by failing to object to them at the sentencing hearing. The State acknowledges *State v. Coffee*, 2020 WI 1, 389 Wis. 2d 627, 937 N.W.2d 579, in which our supreme court held "that the forfeiture rule does not apply to previously unknown, inaccurate information first raised by the State at sentencing." *Id.*, ¶3. In *Coffee*, the inaccurate information consisted of the State's new assertion, at the sentencing hearing, that the defendant had previously been arrested for armed robbery, which was untrue. *Id.*, ¶9. The State asserts *Coffee* does not apply here because the alleged inaccuracy regarding the length of the victim's head wound was readily apparent (including before the sentencing hearing), and because the circuit court, not the State, was the source of the supposed inaccuracy about the location where the videos were stored.

¶18     Although the State has provided an arguable basis for distinguishing *Coffee*, we elect to reach the merits of Goldsmith's sentencing claims. The forfeiture rule is one of judicial administration, not a mandate. *Id.*, ¶21. "The forfeiture rule should not be applied where its application would not further its purpose—the fair, efficient, and orderly administration of justice." *Id.* Here, although it might be marginally more efficient for this court to apply the forfeiture rule, reaching the merits of Goldsmith's appeals may forestall future non-meritorious claims by him. We therefore proceed to the substance of his claims, both of which involve allegedly inaccurate information at sentencing.

8

¶19 A defendant has a due process right to be sentenced based upon accurate information. *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. A defendant is entitled to resentencing on that ground if the defendant establishes that the information was inaccurate and the sentencing court actually relied on the inaccurate information. *State v. Travis*, 2013 WI 38, ¶21, 347 Wis. 2d 142, 832 N.W.2d 491. Inaccuracy is a threshold question; once a defendant proves that there was inaccurate information presented, he or she must establish by clear and convincing evidence that the sentencing court actually relied on it. *Id.*, ¶22.

¶20 If the defendant makes such a showing, the burden shifts to the State to prove the error was harmless. *Id.*, ¶23. "The State can meet its burden to prove harmless error by demonstrating that the sentencing court would have imposed the same sentence absent the error." *Id.*, ¶73. Whether a defendant has been sentenced in violation of his or her due process right and whether an error is harmless are questions of law that this court reviews de novo. *Coffee*, 389 Wis. 2d 627, ¶17.

*I. Substantial Battery—Length of the Victim's Wound*

¶21 Goldsmith first contends he was sentenced based upon inaccurate information because the State asserted the victim's head wound was eight inches long, when in fact it was slightly less than four inches long. It appears undisputed that this was, in fact, inaccurate information. Thus, Goldsmith's claim turns on whether the circuit court actually relied on that information when pronouncing his sentence.

9

¶22 Goldsmith argues the circuit court relied on the length of the wound because it emphasized during its sentencing comments that the injury had left the victim with a "hideous horrible scar" that left the victim "permanently disfigured." The court also mentioned the possibility that the wound could have constituted the "great bodily harm" necessary for a higher charge. Citing the definition of "great bodily harm" contained in WIS. STAT. § 939.22(14), Goldsmith seizes upon the court's statement to argue the length of the laceration was "highly relevant" to the sentence he was given.[4] Finally, Goldsmith relies on the court's statement that although Goldsmith clearly intended to cause bodily harm to the victim, he possibly did not know that his pushing her would cause her to fall in such a way as to "crack her skull open." These comments, in Goldsmith's view, establish that his sentence "clearly was impacted by the State's argument that the laceration was eight inches."

¶23 We are unpersuaded that the comments Goldsmith cites, or any other comments by the circuit court at sentencing, constitute clear and convincing evidence that the court actually relied on the State's assertions about the length of the victim's wound. "Actual reliance" requires proof that the court gave "explicit attention" or "specific consideration" to the inaccurate information, such that it formed a part of the basis for the sentence. *See Travis*, 347 Wis. 2d 142, ¶28. Here, it is undisputed the court never mentioned the specific length of the wound.

---

[4] The definition of "great bodily harm" in WIS. STAT. § 939.22(14) does little to assist Goldsmith's argument in this regard. Such harm is defined as "bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." Application of the statute does not turn on the type of discrepancy in the length of the wound that occurred here.

¶24    Goldsmith's argument depends on the notion that certain of the circuit court's comments about the injury's severity indicate it must have believed the wound was eight inches long. To the contrary, the impetus for the court's emphasis on the severity of the victim's injury was clearly that the wound was so deep that a police officer responding to the incident reported that he could see the victim's bone. Additionally, it is undisputed the court viewed photographs of the injury. Under these circumstances, the court's statements about the wound requiring significant stitching, being disfiguring, and causing horrible scarring were true regardless of whether the wound was four or eight inches. The court's comments, individually or collectively, do not demonstrate by clear and convincing evidence that the court relied on the length of the wound in forming Goldsmith's sentence.

## II. *Possession of Child Pornography—Location of the Videos*

¶25    Goldsmith next asserts that the circuit court relied on inaccurate information that the child pornography was stored on his phone. He contends the court erroneously determined that the videos containing the child pornography were physically located on the phone's hard drive, and that this finding was "highly relevant" to its conclusion that Goldsmith likely created the child pornography. Goldsmith further claims this conclusion was highly prejudicial because the court emphasized that the public needed protection from Goldsmith during sentencing.

¶26    Although we have declined to apply the forfeiture rule generally to Goldsmith's claims, a related doctrine compels us to reject Goldsmith's argument concerning the circuit court's supposed confusion about where or how the child pornography was stored. At the sentencing hearing, the court made a record of the

11

facts that the parties were stipulating to, including that "ten of the videos … are on Mr. Goldsmith's phone." The defense agreed this statement was accurate. Under these circumstances, judicial estoppel precludes Goldsmith from now arguing, inconsistent with his stipulation, that the videos were not located "on his phone." *See State v. Ryan*, 2012 WI 16, ¶32, 338 Wis. 2d 695, 809 N.W.2d 37. The stipulation was all the more significant in this case because it related to additional read-in offenses that had not previously been subjects of the plea agreement.

¶27    Even if judicial estoppel did not apply, the State has shown that any error arising from the circuit court's supposed confusion was harmless.[5] Where and how the videos were stored were not significant factors in the court's conclusion that Goldsmith had created the child pornography. In discussing Goldsmith as the likely creator of the videos, the court cited the forensic analyst's report, the opinion of Goldsmith's girlfriend that his hand could be seen in the videos, the "homemade" nature of the videos, and the fact that the minor girl identified in one of the videos was someone with whom Goldsmith had resided. Additionally, it is undisputed that the videos were located in an e-mail account belonging to Goldsmith, and that Goldsmith had sent the videos to himself.

¶28    The harmless error doctrine applies under these circumstances, as it is apparent the circuit court would have imposed the same sentence even if it had

---

[5] We assume, without deciding, that the information was "inaccurate," although we question whether there was truly any confusion on the circuit court's part. At the inception of its sentencing remarks, it noted that Goldsmith could not explain how the videos came to be located *on his e-mail account*. The court appears to have been speaking colloquially when it made subsequent references to the videos being "on" Goldsmith's phone (as opposed to being *accessible from* Goldsmith's phone). Its statement that the videos were "on" the phone is, at most, ambiguous, and it can be interpreted consistent with the fact that the videos could be (and were) viewed on the phone.

clearly stated its belief that the videos were located in Goldsmith's e-mail and accessible from his phone. Under the circumstances here, the fact that the videos were not physically located on the phone's memory does little to diminish the likelihood that Goldsmith was the creator of the material. Moreover, the court never specifically mentioned any belief that the videos were stored on the phone's hard drive as contributing to its conclusion that Goldsmith was the likely creator of the videos. As the court recognized during the postconviction proceedings, whether the videos were located on the phone or merely accessible from the phone was a "distinction[] without a difference" to the sentencing proceedings.

*By the Court.*—Judgments and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.