COURT OF APPEALS
DECISION
DATED AND FILED

October 22, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2135**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF1089

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RICHARD L. BAINES, V,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Dane County: ELLEN K. BERZ, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Richard L. Baines pleaded guilty to three drug-related offenses.  Following the sentencing hearing, Baines filed a motion for postconviction relief, alleging that the circuit court's comments at sentencing linking his heroin dealing to overdose deaths amounted to a deprivation of his right to due process.  Specifically, he argued that the court sentenced him based on inaccurate information and that the court exhibited objective bias against him.  Following a hearing, the court denied Baines' motion.  We affirm.

## BACKGROUND

¶2    The following facts are taken from the criminal complaint, which Baines stipulated to for purposes of establishing a factual basis at his plea hearing.  Members of the Madison Police Department and the Dane County Sheriff's Office undertook an undercover narcotics investigation in March and April of 2016.  The officers contacted Baines by telephone calls and text messages and successfully arranged purchases of heroin and cocaine on March 31, April 5, April 11, April 19, April 21, and April 26.  In most of these transactions, Baines used another individual to deliver the drugs, although Baines himself delivered the drugs to an undercover officer on one occasion.  As a result of the investigation, officers arrested Baines on May 10, 2016, at which time he was found to be in possession of 70.5 grams of heroin and 26.6 grams of cocaine.

¶3    The State charged Baines with ten offenses:  six counts of manufacturing/delivering heroin; two counts of manufacturing/delivering cocaine; one count of possession with intent to deliver cocaine; and one count of possession with intent to deliver heroin.  Baines' eight charges for manufacturing/delivering were all charged as party to a crime, and all of the counts were charged as repeat offenses and as second or subsequent offenses.

¶4    On August 1, 2016, Baines pleaded guilty to three charges, none of which carried a penalty enhancer: two counts of delivering heroin as a party to a crime, and one count of possession with intent to deliver over 50 grams of heroin. The remaining counts were dismissed but read in.

¶5    The sentencing hearing took place on February 8, 2017. The State recommended a total sentence of fifteen to eighteen years, with seven to eight years of initial confinement and eight to ten years of extended supervision. The Department of Corrections' presentence investigation (PSI) recommended a term of imprisonment totaling between sixteen and eighteen years, with nine to ten years of initial confinement and seven to eight years of extended supervision. Defense counsel, relying on Baines' alternate PSI, recommended a total sentence of ten years, with three to four years of initial confinement and six to seven years of extended supervision. Prior to imposing sentence, the court made the following remarks linking heroin dealing to overdose deaths in the community:

> But the gravity [of the offenses] is also measured by the effect on society. I mean, not a week goes by in Madison where someone does not die, at least one person die, of an overdose of heroin. I cannot count the number of tears that have been shed by mothers and fathers in my courtroom whose children have died of overdose of heroin. And these parents would refer to dealers as murderers. Same thing as taking a gun to their child's head, just clicking it. Because there's a bullet in there. The only question is when, when is it going to go off? Is it going to go off today? Is it going to go off tomorrow? It's going to go off.
>
> You are one of those people who they would look at as a murderer. You can only speculate on how many people you've killed. That's really what we're talking about here. We're not talking about someone smoking some marijuana that you shared with them. We're talking about a heroin dealer. Someone you know. I'm not telling you anything new. You know that people overdose all the time. You know heroin kills. And you knew back when

3

> you were making thousands and thousands and thousands of dollars selling it.
>
> .…
>
> Now, the Court's primary concern is the protection of the public, and every moment you spend in prison in excess of that time that would be sufficient for your rehabilitation is one more moment that another person's life can be saved because you will not be poisoning them. Another person will hopefully not die because of you, at your hand. That's the benefit of a longer sentence.

¶6 The court sentenced Baines to a total of sixteen years of imprisonment for the three convictions, with eight years of initial confinement and eight years of extended supervision.

¶7 Baines filed a postconviction motion pursuant to WIS. STAT. § 974.06 (2017-18), arguing that the court's comments at sentencing showed that the court relied on inaccurate information and evinced judicial bias.[1] The court held a hearing on the postconviction motion, and rejected Baines' arguments.

¶8 Baines appeals the denial of his motion for postconviction relief, reasserting the inaccurate information and bias arguments raised in his postconviction motion.

---

[1] In his motion for postconviction relief, Baines also claimed that he did not understand party-to-a-crime liability and that the sentencing court improperly failed to consider mitigating information. Baines did not prevail on these arguments below, and he does not raise them on appeal.

## DISCUSSION

### I. Inaccurate Information

¶9 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." **State v. Tiepelman**, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. "A defendant who requests resentencing due to the circuit court's use of inaccurate information at the sentencing hearing must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing." **Id.**, ¶26 (quoting **State v. Lechner**, 217 Wis. 2d 392, 419, 576 N.W.2d 912 (1998) (internal quotation marks omitted)). Once actual reliance on inaccurate information is shown, the burden then shifts to the State to prove that the error was harmless. **Id.** Whether a defendant has been denied this due process right is a constitutional issue that we review de novo. **Id.**, ¶9.

¶10 Baines argues that the circuit court's sentence was based on inaccurate information, in violation of his constitutional right to due process. Specifically, Baines contends that the sentencing court improperly relied on "speculation that [Baines'] heroin dealing had killed some unknown number of people." In support of this argument, Baines relies primarily on the court's statement: "You are one of those people who they would look at as a murderer. You can only speculate on how many people you've killed." As set forth below, we disagree that the court's comments constituted "inaccurate information" as that concept is explained in relevant case law.

¶11 In support of his inaccurate-information argument, Baines relies most heavily on **Tiepelman** and **State v. Travis**, 2013 WI 38, 347 Wis. 2d 142, 832 N.W.2d 491. Instead of supporting his argument, these cases show why

Baines' inaccurate-information claim fails. In both ***Tiepelman*** and ***Travis***, the sentencing courts relied on facts that were demonstrably false. *See **Travis***, 347 Wis. 2d 142, ¶18 (explaining that a sentence is constitutionally invalid when the foundation on which it is based is "extensively and materially false"); ***Tiepelman***, 291 Wis. 2d 179, ¶10 (same).

¶12 In ***Tiepelman***, the sentencing court "mistakenly stated that the PSI showed 'something over twenty prior convictions at the time of the commission of this offense back in [November] 1995.'" ***Tiepelman***, 291 Wis. 2d 179, ¶6. In fact, the PSI showed that twenty offenses had been charged, with only five charges resulting in convictions. ***Id.*** Because our supreme court concluded that the sentencing court's comments amounted to actual reliance on the inaccurate information, the court remanded the case for resentencing.[2] ***Id.***, ¶31.

¶13 In ***Travis***, the sentencing court "repeatedly mistakenly stated that it was required to impose a five-year mandatory minimum period of confinement, although no such mandatory minimum was applicable." ***Travis***, 347 Wis. 2d 142, ¶26. Our supreme court concluded that the circuit court "actually relied upon inaccurate information at sentencing" and determined that such reliance was not harmless error. ***Id.***, ¶¶66, 85-86.

¶14 A third and recent inaccurate-information case also featured a demonstrably false fact. In ***State v. Coffee***, 2020 WI 1, ¶9, 389 Wis. 2d 627, 937 N.W.2d 579, "[t]he State told the circuit court that Coffee had a prior arrest

---

[2] In ***State v. Tiepelman***, 2006 WI 66, 291 Wis. 2d 179, 717 N.W.2d 1, the parties agreed "that the issue of harmless error was not developed" sufficiently; therefore, the court did not undertake a harmless error analysis. ***Id.***, ¶4.

for armed robbery. That was inaccurate. He was not arrested for *armed robbery*, but rather for suspicion of *strong-arm robbery* and then released." However, the *Coffee* court concluded that the inaccurate information was harmless because "[t]he circuit court clearly stated on the record at the sentencing hearing what justified the sentence." *Id.*, ¶51.

¶15     In *Tiepelman*, *Travis*, and *Coffee*, the "inaccurate information" at issue was in each instance a fact that was demonstrably false. *Tiepelman* featured a mistake over the number of prior convictions; *Travis*, a mistaken understanding that a five-year mandatory minimum applied; and *Coffee*, a mistaken understanding that a prior arrest was for a more severe crime than was actually alleged.

¶16     By contrast, the sentencing court's comments in this case did not rely on a demonstrably false fact. Instead, the court informed Baines that the parents of children who have died from heroin overdose would view Baines and other heroin dealers as murderers. The court also asked Baines to speculate about the number of overdose deaths caused by his heroin dealing. These comments do not reflect reliance on the type of "materially false" information that comes within the ambit of the "inaccurate information" jurisprudence upon which Baines relies.[3] *See Travis*, 347 Wis. 2d 142, ¶18; *Tiepelman*, 291 Wis. 2d 179, ¶10.

---

[3] Because we conclude that Baines has failed to establish that he was sentenced based on inaccurate information, we need not address whether the court actually relied on the information at issue or whether any error was harmless. We also note that Baines does not argue that his sentence was based on an improper factor. *See, e.g.*, *State v. Harris*, 2010 WI 79, ¶30, 326 Wis. 2d 685, 786 N.W.2d 409. Our review of improper factor jurisprudence reveals that any such argument would be unavailing.

Accordingly, Baines has not met his burden of showing that he was sentenced based on inaccurate information.

## II. *Judicial Bias*

¶17  Baines argues that the sentencing court's comments also demonstrated judicial bias, in violation of Baines' due process rights. We disagree.

¶18  "The right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. We presume that a judge has acted fairly, impartially, and without bias. *State v. Herrmann*, 2015 WI 84, ¶24, 364 Wis. 2d 336, 867 N.W.2d 772. To overcome that presumption, the burden is on the party asserting judicial bias to show bias by a preponderance of the evidence. *Id.* "If a party rebuts this presumption and shows a due process violation, the error is structural and not subject to a harmless error analysis." *Miller v. Carroll*, 2020 WI 56, ¶16, 392 Wis. 2d 49, 944 N.W.2d 542.

¶19  In evaluating whether a party has rebutted the presumption, our courts have taken both a subjective and objective approach. *Id.*, ¶21. Subjective bias focuses on the judge's own determination of his or her impartiality. *See id.* Here, however, Baines raises an objective bias claim, which focuses on whether there is "'a serious risk of actual bias—based on objective and reasonable perceptions.'" *Id.*, ¶24 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009)). "'Due process requires an objective inquiry' into whether the circumstances 'would offer a possible temptation to the average … judge to … lead him [or her] not to hold the balance nice, clear and true.'" *Id.* (quoting *Caperton*, 556 U.S. at 885). "[I]t is the exceptional case with 'extreme facts'

8

which rises to the level of a 'serious risk of actual bias.'" ***Id.*** (quoting ***Caperton***, 556 U.S. at 886-87). Whether the circuit court was objectively biased presents a question of law that this court reviews de novo. ***Herrmann***, 364 Wis. 2d 336, ¶23.

¶20 Baines rests his bias argument principally on this court's opinions in ***Goodson*** and ***State v. Gudgeon***, 2006 WI App 143, 295 Wis. 2d 189, 720 N.W.2d 114. We disagree that these cases are instructive because in both ***Goodson*** and ***Gudgeon*** it was clear that the sentencing courts had predetermined the outcome of the cases, which is not the situation here.

¶21 In ***Goodson***, the circuit court followed up its imposition of sentence by stating: "'[I]f you deviate one inch from these rules, and you may think I'm kidding, but I'm not, you will come back here, and you will be given the maximum, period. Do you understand that?'" ***Goodson***, 320 Wis. 2d 166, ¶2. The court then reiterated the point: "'[A]s I have told you, you do one deviation from these rules, and you are going to come back here, and you are going to get the maximum ....'" ***Id.*** Goodson then began serving his sentence, but, before the sentence was complete, Goodson's extended supervision was revoked due to numerous violations. ***Id.***, ¶5. At the reconfinement hearing, the court described its decision as "pretty easy" and ordered the maximum period of reconfinement, mentioning "'the agreement you and I had back at the time that you were sentenced.'" ***Id.*** On appeal from the denial of Goodson's postconviction motion challenging the circuit court's comments at the reconfinement hearing, we concluded that "the court unequivocally promised to sentence Goodson to the maximum period of time if he violated his supervision rules." ***Id.***, ¶13. Thus, the circuit court's "prejudged" outcome violated Goodson's due process rights. ***Id.***, ¶17.

¶22    We similarly concluded that a due process violation occurred where a circuit court prejudged a probation extension decision.  In **Gudgeon**, the defendant's probation agent had sent a letter to the court with a proposal to avoid probation extension by instead converting outstanding restitution into a civil judgment. **Gudgeon**, 295 Wis. 2d 189, ¶3.  The court handwrote at the bottom of the letter, "'No—I want his probation extended,'" and sent copies to the probation agent, the district attorney, and Gudgeon's last attorney of record. **Id.**  At the probation extension hearing three months later, the court extended probation for two years. **Id.**, ¶4.  Focusing on the court's written statement, we determined that "[t]he ordinary reasonable person would discern a great risk that the trial court in this case had already made up its mind to extend probation long before the extension hearing took place." **Id.**, ¶26.  As a result, we concluded that the circuit court "was not objectively impartial." **Id.**, ¶27.

¶23    In contrast to **Gudgeon** and **Goodson**, the instant case presents no indication that the court prejudged the outcome.  Instead, Baines argues that the court exhibited bias against him because the court sentenced him "based on its personal view that all heroin dealers are murderers" and had a "predetermined opinion of him that is unsupported by the facts of record."

¶24    We first note that Baines' assertion that the circuit court had the "personal view that all heroin dealers are murderers" mischaracterizes the court's comments.  Taken in context, the court's comments were meant to convey the well-known dangers of heroin, including death, which Baines concedes by stating

that "heroin is known to kill."[4]  More fundamentally, however, the circuit court's remarks do not reflect a predetermination of the sentencing outcome, as prohibited by *Gudgeon* and *Goodson*.

¶25    We also agree with the State that other relevant precedent supports our conclusion in this case.  For example, the State compares this case to *Herrmann*, in which our supreme court rejected Herrmann's claim that the sentencing court was objectively biased.  *Herrmann*, 364 Wis. 2d 336, ¶¶67-68. In *Herrmann*, the judge presiding over sentencing for a conviction of homicide by intoxicated use of a vehicle described having lost her own sister due to a motor vehicle accident caused by a drunk driver.  *Id.*, ¶¶16, 58-59.  The judge expressed great sympathy for the victims, at one point suggesting that "'destiny or a higher power'" might have brought her to preside over the case because, "'probably more than anyone else'" sitting on the bench in that county, she was able to "'understand the pain that these victims are feeling.'"  *Id.*, ¶49.  The judge also stated that, although she had "'to make Mr. Herrmann pay,'" nothing she could do would lessen the victims' pain.  *Id.*  Further, in addressing the larger societal problem of drinking and driving, the judge commented:  "'I want to make sure that the story is not about what a monster Jesse Herrmann was … so that we can then wrap up this little episode in a nice neat little box and all go about our business as usual, that Mr. Herrmann the monster is off the streets, and we don't have to worry about this again ....'"  *Id.*, ¶59.

---

[4] Also, Baines' alternate PSI noted that a 2016 data report from the Centers for Disease Control indicated that heroin deaths had recently surpassed gun homicides for the first time in more than 15 years.

11

¶26 Our supreme court concluded that, "when viewed in context, a reasonable person would not question the court's partiality based on these statements." *Id.*, ¶49. The court noted that the judge's comments about her sister, although personal, "were used in an attempt to illustrate the seriousness of the crime and the need to deter drunk driving in our society" and were not "an expression of bias against Herrmann." *Id.*, ¶60. The court also emphasized that the judge fulfilled her obligations to consider the objectives of sentencing, including the gravity of the offense, the protection of the public, and the character and rehabilitation of the defendant. *Id.*, ¶¶61-66.

¶27 As in *Herrmann*, in this case, "when viewed in context, a reasonable person would not question the court's partiality based on [the court's] statements." *See id.*, ¶49. Likewise, the court's comments here "were used in an attempt to illustrate the seriousness of the crime and the need to deter" the trafficking of heroin, and were not "an expression of bias against" Baines. *See id.*, ¶60.

¶28 In addition, as in *Herrmann*, the circuit court in this case considered the primary factors of sentencing: the gravity of the offenses, the character of the defendant, and the protection of the public. *See id.*, ¶¶61-66. The court noted that the gravity of the offenses could be measured in a number of ways, including by the maximum term of imprisonment allowed by statute—which the court stated was over 67 years for Baines' offenses—and by the effect on society. It was within the context of examining the effect on society that the court made the comments linking heroin to overdose deaths. In discussing the gravity of the offenses, the court further observed that, at the time of the offenses in this case, Baines was on supervision for other drug offenses from 2008 and 2013, and that Baines was a "businessman" who had a "sophisticated" operation of drug dealing, which included using other people and taking various precautions.

¶29    With regard to Baines' character, the court stated: "A person's character is never defined in a moment. It's defined in a lifetime. And I have never met someone completely good or completely bad. We're all a combination." The court noted Baines' love for his three young children, as well as his completion of a high school equivalency degree and an AODA program. However, the court stated that Baines was 28 years old, "past the time when people just do stupid childish things" and further observed that Baines was not paying child support.

¶30    Finally, the court considered the protection of the public, which was the court's "overriding concern" in sentencing Baines. In addition to the remarks at issue in this case, the court also noted that Baines was "peddling poison to people, to vulnerable people," many of whom were addicted, and that Baines took advantage of, and profited from, their addiction. The court stated that, while rehabilitation may have been a primary concern when Baines was placed on probation in 2008 or twice in 2013, it was no longer the court's primary concern.

¶31    After considering these factors, the court sentenced Baines to a total of eight years of initial confinement and eight years of extended supervision, observing: "Sentences do not get shorter with every new conviction or with increasing seriousness of those convictions. They get longer ...." The court's sentence was within the sentencing ranges recommended by the prosecutor and the Department of Corrections' PSI, and well below the maximum sentence available.

¶32    Based on the foregoing, we conclude that Baines has not met the high bar necessary to overcome the presumption of impartiality. He has not shown that the court prejudged his sentence as in *Goodson* and *Gudgeon*, nor has he otherwise shown that this is one of the "exceptional case[s]" with "extreme

facts" that "rises to the level of a serious risk of actual bias."[5]  ***Miller***, 392 Wis. 2d 49, ¶24 (internal quotation marks and quoted source omitted).  We therefore reject his claim of judicial bias.

## CONCLUSION

¶33    For the reasons stated above, we conclude that Baines has failed to show that his sentence was based on inaccurate information or that he was denied his right to an impartial judge.  Accordingly, we affirm the circuit court's order denying Baines' motion for postconviction relief.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

---

[5] The only cases Baines discusses in any detail in support of his judicial bias argument are ***State v. Goodson***, 2009 WI App 107, 320 Wis. 2d 166, 771 N.W.2d 385, and ***State v. Gudgeon***, 2006 WI App 143, 295 Wis. 2d 189, 720 N.W.2d 114.  However, as noted by the State, other cases are instructive in showing the type of extreme facts required to establish judicial bias. *See, e.g.*, ***Miller v. Carroll***, 2020 WI 56, 392 Wis. 2d 49, 944 N.W.2d 542 (presumption of judicial impartiality rebutted and due process violation found as a result of extensive Facebook communications between judge and litigant while case was pending); ***Caperton v. A.T. Massey Coal Co.***, 556 U.S. 868, 884, 886-87 (2009) (contribution of roughly $3 million to judge's campaign from individual with a personal stake in a case before the court created "serious risk of actual bias" that rose to a violation of due process).

14