COURT OF APPEALS
DECISION
DATED AND FILED

March 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1082-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF2412

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GEORGEANN K. PEARSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Georgeann K. Pearson appeals a judgment of conviction entered following a jury trial for second-degree reckless homicide and an order denying postconviction relief. Pearson contends that trial counsel was ineffective for failing to object when the State called a witness who was not on its witness list. In addition, Pearson contends that trial counsel was ineffective for failing to object to inaccurate information at sentencing. For the reasons discussed below, we reject Pearson's claims and affirm.

## BACKGROUND

¶2 Pearson and her sister, Shawanee L. Dawkins, were both charged with first-degree reckless homicide, as a party to a crime, relating to the death of three-month-old Laquis Dawkins, who died from malnutrition on April 10, 2017.[1] At birth, Laquis weighed six pounds, eight ounces, which was in the fifty to seventy-fifth percentile for weight. At death, Laquis weighed just over eight pounds, which was under the fifth percentile for weight, and had sunken features, thin and brittle skull bones, edema of the lower extremities, tenting of the skin, and decreased adipose tissue.

¶3 Pearson and Dawkins are the first cousins of Laquis's mother, Crystal Dawkins. According to the criminal complaint, Pearson told police that Crystal has a genetic mental deficiency and functions at a cognitively low level. As a result, Pearson served as Crystal's payee for social security benefits, the proxy for Crystal's food stamps, and the legal representative "for anything else

---

[1] We note that the facts set forth in this decision are relevant to the issues and arguments that Pearson raises. Dawkins also filed an appeal. *See* **State v. Dawkins**, No. 2020AP1476-CR. We do not address the merits of that matter in this opinion.

that may come up." In addition, Crystal lived with Pearson and Dawkins, who allegedly assumed responsibility for caring for Crystal's two children, Laquis and L.D.[2] This included feeding, bathing, and changing the children.

¶4 Prior to trial, the State moved to admit other-acts evidence regarding a 2015 hospitalization of L.D., for being underweight. The State argued that the other-acts evidence established that Pearson and Dawkins knew Crystal was incapable of accepting responsibility for her own children, admitted to being the primary caretakers for L.D., and were educated on how to properly feed an infant and the importance of monitoring an infant's weight gain. The circuit court ruled that the evidence was admissible.[3]

¶5 Although Pearson and Dawkins were charged separately, the two cases were tried together. In opening statements, Pearson's attorney argued that Crystal was "responsible for her children" and "has a pattern of neglecting her children." Pearson's attorney stated that they would be calling five people who know Crystal "very well" and have "observed her caring for her children, and competently doing so. These people will tell you, I anticipate, that she was a

---

[2] We use initials for confidentiality purposes.

[3] The Honorable David Borowski presided over the other-acts motion. We refer to Judge Borowski as the circuit court. The Honorable Janet C. Protasiewicz presided over Pearson's trial and the postconviction proceedings. We refer to Judge Protasiewicz as the trial court. We also note that Pearson does not challenge the other-acts ruling on appeal; however, we reference it for the purpose of providing additional context.

primary caregiver of her children." Pearson's attorney further stated that the jury would not be hearing from Crystal.[4]

¶6 On the third day of trial, the State indicated that Crystal, who was not on its witness list, was available to testify.[5] The State asked the trial court for permission to amend its witness list so that it could call Crystal in its case-in-chief, rather than calling her as a rebuttal witness, out of convenience. The State indicated that Pearson and Dawkins had all of the statements Crystal had made through the course of the investigation.

¶7 Pearson's attorney did not object, but Dawkins's attorney did. Pearson's attorney told the trial court that "I feel it is important that this jury hear from Crystal" and "[t]his jury is supposed to know the truth."

¶8 The trial court denied Dawkins's attorney's objection and allowed Crystal to testify. The court stated that the defense opened the door to her testimony. In addition, the court observed that Crystal was a central witness and it was not a surprise that she might testify.

¶9 On direct examination, Crystal testified to her age, date of birth, that Laquis and L.D. are her children, that Pearson and Dawkins are her first cousins, and that she and Laquis lived with Pearson and Dawkins. When asked the names

---

[4] Pearson's attorney also stated that "the State contends that [Crystal] is so mentally disabled that she should not be charged. But you're going to hear … she's not so disabled that she can go down to Racine and party." The State objected, and the trial court sustained the objection. The court instructed the jury to "disregard that response or that comment from counsel."

[5] Prior to trial, the State filed a witness list and an amended witness list. Crystal was not on either list.

of everyone that fed Laquis, Crystal stopped verbally responding. The State then asked Crystal to write "yes" or "no" to three questions. Crystal confirmed in writing that she fed Laquis, Pearson fed Laquis, and Dawkins fed Laquis. When asked if Pearson and Dawkins helped her with Laquis, Crystal wrote "I do not know."

¶10     On cross-examination, Crystal nodded her head "yes" or "no" in response to questions. Crystal indicated that she liked shopping for her children, she does not like to cook, she takes care of her children, they slept in the same room as her, she likes to travel, she has not traveled to Racine, and she likes babysitting other children.

¶11     After Crystal's testimony, Dawkins's attorney moved for a mistrial based on the State's failure to include Crystal on its witness list, the fact that the State failed to show good cause for its failure, and Crystal's behavior in front of the jury.[6] Pearson's attorney joined in the motion for mistrial.

¶12     The trial court denied the request for a mistrial. The court admitted that it "would have been cleaner" for the State to wait to call Crystal in rebuttal. The court, however, stated that based on how challenging it was for Crystal to testify, "it probably was in her best interest to be called out of order and not have to sit around for, potentially, a day or two." In addition, the court stated that the State had good cause for failing to include Crystal on its witness list because

---

[6] Dawkins's attorney noted that Crystal had difficulty entering the courtroom, was not able to stand up to take the oath, and could not face the defense counsel's table. Additionally, a victim witness advocate sat next to Crystal during her testimony.

Crystal would have been called in rebuttal and the defense opened the door to her testimony.

¶13    Pearson called her son and two daughters to testify. They claimed that Pearson did not help care for Crystal's children and that Crystal would not let others help with her children. In addition, one of Pearson's daughters testified that Crystal was a capable mother, and that Crystal "plays off the fact that people think she's slower than the average[.]"

¶14    Pearson also testified and denied identifying herself as a caregiver for Laquis or L.D. Pearson testified that Crystal could read and write, had graduated, travelled by herself, and that she was only "somewhat" mentally incapacitated. Pearson stated that Crystal would get upset and leave the room when anyone said anything that suggested her children needed something. Pearson also denied declining services for Crystal.

¶15    The jury found both Pearson and Dawkins guilty of second-degree reckless homicide, a lesser-included offense.[7] Pearson was sentenced to six years of initial confinement and three years of extended supervision.

¶16    Pearson filed a postconviction motion alleging that her attorney was ineffective. Pearson contended that trial counsel should have objected to the

_____

[7] The judgment of conviction reflects that Pearson was convicted of second-degree reckless homicide as a party to a crime. The jury, however, was not instructed on party to a crime liability, and the jury's verdict did not include a finding that Pearson was guilty as a party to a crime. Accordingly, the jury found that Pearson committed the crime of second-degree reckless homicide as a direct actor. *See State v. Brown*, 2012 WI App 139, ¶14, 345 Wis. 2d 333, 824 N.W.2d 916. Pearson does not request that we amend the judgment of conviction. We observe that a person who directly commits a crime is a party to the crime. *See* WIS. STAT. § 939.05(1)-(2)(a) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

State's request to have Crystal testify. In addition, Pearson alleged that trial counsel was ineffective for failing to object to inaccurate information at sentencing. Pearson contended that the trial court relied on inaccurate information when it said, "You described a feeding schedule for that child, which contradicted the information that was given to the medical providers."

¶17   After briefing, the trial court denied the postconviction motion without an evidentiary hearing. The court observed that Pearson "opened the door" to Crystal's testimony when it insinuated during opening statements that the State was "hiding the ball" by not presenting Crystal's testimony. The court also found that any error on counsel's part did not prejudice Pearson because it would have allowed Crystal's testimony in rebuttal. The court indicated that there could not be any prejudice if the only difference Pearson identifies is the timing of the evidence admitted, and not the nature or the substance of the evidence.

¶18   In regards to the inaccurate information claim, the trial court stated that the feeding schedule was not material. The court stated that it agreed with the State's argument that "What was material at sentencing was [Pearson] testifying under oath and disavowing any responsibility for [Laquis's] starvation and death" and that Pearson informed multiple people that she and Dawkins were the main caretakers for Laquis and responsible for feeding Laquis. This appeal follows. Additional relevant facts are referenced below.

## DISCUSSION

¶19   On appeal, Pearson renews her arguments that trial counsel was ineffective for: (1) failing to object when the State called Crystal, who was not on its witness list; and (2) failing to object to alleged inaccurate information at sentencing. As discussed below, we reject both of Pearson's claims.

7

### A. Legal Principles

¶20 To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* We need not address both prongs of the *Strickland* test if the defendant does not make a sufficient showing on one of the prongs. *Id.* at 697.

¶21 A trial court is required to hold an evidentiary hearing on a motion only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether a defendant's motion has alleged sufficient material facts entitling the defendant to relief is a question of law that we review *de novo*. *Id.*, ¶9. If a postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.*

### B. Crystal's Testimony

¶22 WISCONSIN STAT. § 971.23(1)(d) requires the State to disclose to the defendant "[a] list of all witnesses and their addresses whom the district attorney intends to call at the trial." "The court shall exclude any witness not listed … unless good cause is shown for failure to comply." Sec. 971.23(7m)(a). This

requirement, however, "does not apply to rebuttal witnesses[.]" Sec. 971.23(1)(d); *State v. Novy*, 2013 WI 23, ¶25, 346 Wis. 2d 289, 827 N.W.2d 610.

¶23     Here, it is undisputed that Crystal was not on the State's witness list. It is also undisputed that Pearson's attorney intentionally chose not to object to Crystal's testimony.[8]   Pearson's attorney told the trial court that "I feel it is important that this jury hear from Crystal" and "[t]his jury is supposed to know the truth."  Nonetheless, Pearson argues that her attorney was ineffective for failing to object to Crystal's testimony.

¶24     We reject Pearson's argument that trial counsel was ineffective. Even if we assume, without deciding, that trial counsel performed deficiently by failing to object and argue that Crystal's testimony should have been excluded— and we emphasize that we are not making that finding here—we conclude that Pearson has failed to establish that she was prejudiced by Crystal's testimony. *See Strickland*, 466 U.S. at 697.

¶25     In this case, the State indicated on the record that it had turned over all the pretrial statements made by Crystal to the defense prior to trial.  Pearson does not allege that she failed to receive any of Crystal's pretrial statements or that the content of Crystal's testimony was a surprise.

¶26     Moreover, Crystal's testimony was not damaging to the defense. Crystal's testimony included her age, date of birth, that Laquis and L.D. are her

---

[8] We note that Pearson's attorney later joined the motion for a mistrial based on Crystal's testimony.  However, as Pearson concedes, this was "too late."  By that time, the jury had already heard Crystal's testimony.  A party forfeits an objection to the admission of evidence if the objection is not timely.  *See* WIS. STAT. § 901.03(1)(a); *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.

children, that she and Laquis lived with Pearson and Dawkins, and that she likes to shop and travel. When asked if Pearson and Dawkins helped her with Laquis, Crystal wrote "I do not know."

¶27     While Crystal confirmed in writing that Pearson and Dawkins fed Laquis, this information was merely cumulative to the other testimony presented at trial. At trial, Pearson testified that she fed Crystal's children when she was babysitting them. In addition, Detective James Hensley testified that Pearson said that she and Dawkins shared responsibility for caring for Laquis. Pearson also told Hensley that when she fed Laquis, she would feed him an entire eight-ounce bottle, and a week before his death, they had switched over to feeding him cereal.

¶28     Pearson contends that she was prejudiced because the jury was able to observe Crystal's "complete inability to have been able to take care of [Laquis]." However, the jury heard other testimony regarding Crystal's level of functioning. For instance, Patrice Butler, Crystal's court appointed guardian, testified that Crystal's cognitive difficulties were severe. Butler testified that Crystal was unable to make decisions for herself and that she has difficulty retaining information. Butler also testified that Crystal does not take care of herself and needs cues. Likewise, social worker Lauren Borkenhagen testified that Crystal "functioned at a very low level." In addition, visiting nurse Evelyn Hansen testified that she did not think Crystal was capable of taking care of L.D.[9]

---

[9] Pearson also claims that the State's failure to name Crystal on the witness list was prejudicial because Pearson was not able to "meaningfully prepare for her testimony" and a "detailed investigation would have occurred[.]" This argument is conclusory. Pearson does not explain how her testimony would have differed or what an investigation would have revealed. We will not develop arguments for parties. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶29 Thus, we conclude that Pearson has not demonstrated a reasonable probability that the verdict would have been different if Crystal's testimony was excluded. *See* ***State v. Sholar***, 2018 WI 53, ¶46, 381 Wis. 2d 560, 912 N.W.2d 89 (stating that a defendant "need not prove the jury would have acquitted him, but he must prove there is a reasonable probability it would have, absent the error" (underlining omitted)). Consequently, the trial court properly denied Pearson's ineffective assistance of counsel claim without an evidentiary hearing.

## C. Inaccurate Information

¶30 A defendant has a due process right to be sentenced based on accurate information. ***State v. Travis***, 2013 WI 38, ¶17, 347 Wis. 2d 142, 832 N.W.2d 491. To obtain resentencing based on inaccurate information, a defendant "must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing." ***State v. Tiepelman***, 2006 WI 66, ¶26, 291 Wis. 2d 179, 717 N.W.2d 1 (citations omitted).

¶31 If a defendant shows that the information is inaccurate, the defendant must then prove "by clear and convincing evidence that the circuit court actually relied on the inaccurate information." ***Travis***, 347 Wis. 2d 142, ¶22. If the defendant makes that showing, "the burden then shifts to the State to prove the error was harmless." *Id.*, ¶23. "The State can meet its burden to prove harmless error by demonstrating that the sentencing court would have imposed the same sentence absent the error." *Id.*, ¶73.

¶32 At Pearson's sentencing, the trial court stated "You described a feeding schedule for that child, which contradicted the information that was given to the medical providers." Pearson contends that this statement was inaccurate and trial counsel should have objected.

¶33    Even if we assume, without deciding, that the trial court's statement about the feeding schedule was inaccurate, Pearson has not demonstrated by clear and convincing evidence that the court actually relied on this statement in sentencing.  *See id.*, ¶22.  Whether the court actually relied on inaccurate information "turns on whether the circuit court gave 'explicit attention' or 'specific consideration' to the inaccurate information, so that the inaccurate information 'formed part of the basis for the sentence.'"  *Id.*, ¶28 (citation omitted).

¶34    Here, the sentencing transcript shows that the feeding schedule statement did not "form[] part of the basis for the sentence."  *See id.*  The trial court's remarks reflect that the sentence was based on Pearson's failure to accept responsibility and the horrific circumstances of Laquis's death.

¶35    At the outset of its remarks, the trial court stated that "it's pretty clear to me that even now you don't accept responsibility for the conduct that you engaged in that caused this three-month-old infant to starve to death."  The court stated that "when … Milwaukee Child Protective Services went into your home in regard to eight-month-old [L.D.] in September of 2015 that you pretty much blew them off."  The court stated that it is "obvious" that Crystal is "severely delayed" and could not care for a child.  The court observed that Pearson indicated that she did not want people coming into the home and refused programming for L.D.

¶36    The trial court described Laquis at the time of his death.  The court stated that Laquis was "born at six pounds, eight ounces, between the [fifty] and [seventy-fifth] percentile for weight, sent home, and … at his death, he weighs just over eight pounds, under the [fifth] … percentile for weight."  The court stated that the autopsy photos were "horrific" and that Laquis was "utterly emaciated."

¶37 The trial court further stated that Pearson was "the head of that household," the payee, and "basically let [Laquis] starve to death under your watch." The court stated that "It was clear to me from your comments … in the presentence report that either you don't understand or you refuse to consider just how culpable you were in this child's death." Thus, we reject Pearson's argument that the court actually relied on the one-sentence feeding schedule statement.

¶38 Finally, even if the trial court relied on the feeding schedule statement, any error was harmless. *See id.*, ¶23. When we consider the court's remarks as a whole, we are satisfied that the court would have imposed the same sentence regardless. *See id.*, ¶73. As stated above, the court's remarks reflect that the sentence was based on Pearson's failure to accept responsibility and the horrific circumstances of Laquis's death. The reference to the feeding schedule was merely a single sentence within the remarks as a whole.

¶39 Moreover, we note that, at the conclusion of sentencing, the trial court stated that "quite frankly, when [the prosecutor] told me what his recommendation was, I thought it was light." The court, however, went on to state that the prosecutor's recommendation of six years initial confinement and three years extended supervision was an "appropriate sentence" given "the suffering you're going to do having your children basically raising themselves for six years outside of your presence" and "the extremely dysfunctional horrible life that you had to lead as a young person[.]" Thus, even if the information was inaccurate and the court actually relied on it, any error was harmless.

¶40 Therefore, we conclude that trial counsel was not ineffective for failing to object at sentencing and the trial court properly denied the postconviction motion without a hearing. *See State v. Allen*, 2017 WI 7, ¶46, 373

13

Wis. 2d 98, 890 N.W.2d 245 (holding that trial counsel could not be ineffective at sentencing for failing to make a meritless objection).

## CONCLUSION

¶41    In sum, for the reasons stated above, trial counsel was not ineffective for failing to object to Crystal's testimony or to the feeding schedule statement at sentencing. Accordingly, we conclude that the trial court properly denied the postconviction motion without a hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.